[L. A. No. 13594. In Bank.—December 29, 1933.]

PETER STENDERUP, Appellant, v. BROADWAY STATE BANK OF LOS ANGELES (a Corporation) et al., Respondents.

Edwin J. Miller for Appellant.

Bicksler, Smith, Parke & Catlin for Respondents.

PRESTON, J.—We hereby adopt as a portion of this opinion, the following statement prepared by Mr. Justice Sturtevant as a part of the decision heretofore rendered herein by the Honorable District Court of Appeal, First Appellate District, Division Two.

"Claiming that a judgment in an accounting suit was fraudulently obtained, the plaintiff commenced an action against the defendants. The defendants appeared and filed a demurrer; the demurrer was sustained without leave to amend and judgment was entered in favor of the defendants for their costs. From that judgment the plaintiff appealed. After the demurrer was sustained the plaintiff appeared and moved to set aside the order sustaining the demurrer and to allow him to file an amended complaint. The motion was denied and from that order the plaintiff has appealed. The order herein last mentioned contained a direction that the action be dismissed. The defendants thereafter made a motion that said language be stricken out. The motion was granted. From the order granting that motion the plaintiff has also appealed. The briefs are confined to, and this opinion will be confined to, a consideration of the appeal from the judgment.

"In language reasonably free from objection the plaintiff alleged the following facts: Prior to March 15, 1928, the Broadway State Bank had been duly organized and was transacting business in Los Angeles. It had a capital stock and the shares were owned by a number of stockholders. W. D. Howard, representing L. B. Howard, his wife, purchased the bank. The purchase was accomplished by purchasing all of the stock from the stockholders and obtaining from the directors written resignations. The price paid was $35,000. At the time of the purchase the bank held certain notes of doubtful value. Under the terms of the purchasing agreement those notes aggregating $31,100 were not purchased but were taken out of the assets of the bank and impounded and left in the possession of the bank for collection and liquidation. They were to be so held by the bank from the date of the purchase, March 15, 1928, to March 15, 1929. On the latter date on demand made the bank agreed

to turn over to the former stockholders all moneys collected from the impounded notes, or other notes in lieu thereof, and all of the notes that had not been collected. For some reason the bank did not make the settlement on March 15, 1929, and the stockholders assigned their rights to the plaintiff and he commenced an action for an accounting. He sued the bank and Mrs. Howard. The defendants answered and a trial was had before the trial court sitting without a jury. The trial court made findings in favor of the plaintiff. Among other things it found that the defendant bank had collected $14,021.68 prior to March 15, 1929, and $1,227.97 after March 15, 1929. For the $14,021.68 collected the court found that the bank elected to retain the same and to surrender several notes specified in the findings. It also found that the defendant bank held impounded notes which, with those just mentioned, aggregating $27,107.69, which had been placed in the possession of the court. The court awarded the plaintiff judgment for $1,227.97 with interest and it also directed that said unpaid notes in the sum of $27,107.69 which were then in the possession of the court, should be turned over to the plaintiff as the property of plaintiff's assignors. The judgment on said findings was thereafter entered. No appeal was taken. After the plaintiff obtained possession of the notes so turned over to him, he attempted to collect them. After he had proceeded for a while in his effort to collect, he alleges that he learned that five of the notes aggregating $9,816.78, which had been turned over to him as uncollected, had, in fact, been wholly paid. In the accounting suit the bank admitted that it had held the impounded notes as trustee. It is alleged that Mr. W. D. Howard, as manager, and Mr. Charles S. Lewis, as cashier, testified that the bank had collected, between March 15, 1928, and March 15, 1929, the sum of $14,021.68 and after March 15, 1929, it collected $1,090.73 and no more, and that the defendants produced the impounded notes in open court, placed them in the custody of the clerk, and offered to surrender them to the plaintiff. It is also alleged that the plaintiff knew nothing as to what collections had been made; that no testimony was offered except the testimony of the defendants, that the plaintiff relied on that testimony and that the trial court accepted it and acted on it and rendered the judgment above mentioned. Continu-

ing, it is alleged that after the decree in the accounting suit had become final the plaintiff learned and the fact is alleged that the testimony given by the officers of the defendant bank was false and fraudulent and that the bank had in fact collected $9,816.78 more than as testified by its officers, and that it did these things for the fraudulent purpose of deceiving the court and deceiving the plaintiff in the accounting suit and that the bank and its cashier knew that the bank had collected $9,816.78 not mentioned in said testimony. In this connection by proper averment it is stated that the defendants conspired to do these things. Furthermore, it is alleged that they concealed the facts from the plaintiff and from the court. Continuing, the plaintiff alleges that the impounded assets, $31,100, included some overdrafts and charges constituting a 'suspense account' aggregating $4,980.59; that prior to the trial of the accounting suit all of said sum had been collected, but that the bank fraudulently withheld said information from the court and violated its duty as a trustee of plaintiff's assignors. Then follow similar allegations of false testimony by the defendants, reliance on the same by the plaintiff and the trial court, and the deception of the court. As a second cause of action the plaintiff pleaded a common count as for moneys had and received. However, in numerous places, it clearly appears from the statements of counsel that the second cause of action is based on the specific facts set forth in the first count. The demurrer of the defendants was addressed to the complaint and to each of the counts contained therein.''

It will be noted from the above recital of facts that it is substantially averred that plaintiff and also his assignors prior to the institution of the former action for an accounting, and during its pendency, applied to defendant bank and its officers for information respecting the notes and accounts upon which payments had been made and also respecting the notes and accounts which remained uncollected, but that said bank and said defendants, with the intention of cheating and defrauding plaintiff, neglected and refused to furnish him or his assignors with all or any of this said information and that by reason of this fact he was unable to controvert and did not attempt to controvert the account as tendered to the court by the said bank. If this conduct was, as alleged, for the fraudulent purpose of preventing

information as to the status of these notes from reaching plaintiff, and to deceive him and the court, it was conduct extrinsic and collateral to the issue made by the pleadings and authorized relief in equity under the rule relating to extraneous fraud, recently discussed, and perhaps extended, by this court in the case of *Caldwell* v. *Taylor*, 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194]. See, also, *Merrill* v. *First Nat. Bank*, 94 Cal. 59 [29 Pac. 242]. Although the point is not made it would seem that plaintiff could justify his conduct by excusable mistake superinduced by said acts and conduct of the defendants, which were collateral to the issue tried by the court. (*Bacon* v. *Bacon*, 150 Cal. 477, 486–488 [89 Pac. 317]; *Soule* v. *Bacon*, 150 Cal. 495 [89 Pac. 324].)

It should also be noted here that in the former action only defendant bank and L. B. Howard were made defendants. Here the defendants are said bank, Chas. H. Lewis and W. D. Howard. It is only the bank that is the defendant in both actions. Moreover, in the former action the court expressly confined its judgment to the bank to the exclusion of defendant L. B. Howard. Defendant Lewis and W. D. Howard are therefore in no position to rely upon that former judgment to relieve them of the duty of meeting this action for fraudulent conversion of plaintiff's property. Besides, we are pointed to no reason why plaintiff has not shown actionable injury resulting from the pleaded civil conspiracy in which neither defendant bank nor the defendants Lewis and Howard, or either of them, could rely upon the former judgment for protection. (*Mox Inc.* v. *Woods*, 202 Cal. 675 [262 Pac. 302].)

The defendants, under the allegations of the complaint, are involuntary trustees of the property of plaintiff. We see no reason why they should not be required to meet the allegations of the complaint on its merits.

The judgment accordingly is reversed, with directions to the court below to overrule the demurrer. This conclusion renders all other appeals immaterial and therefore they are hereby dismissed.

Langdon, J., Shenk, J., and Curtis, J., concurred.

THOMPSON, J., Dissenting.—I dissent. I cannot agree that the fraud of the bank in this case was extrinsic. It

was a false statement going to the merits of the original action and was not designed to keep the adverse party from having his day in court. Suppose the witness for the bank had taken the stand and sworn to the false statements, thus committing perjury, equity could grant no relief because of the intrinsic nature of the fraud. It may be possible to avoid the effect of the judgment by proving a conspiracy, as is suggested in the latter part of the opinion. But nevertheless, the nature of the fraud, i. e., whether intrinsic or extrinsic, is not changed by that circumstance.

Waste, C. J., concurred.