[Civ. No. 34631. Second Dist., Div. One. Apr. 21, 1970.]

ESKIL HULTIN, Plaintiff and Respondent, v.
CHARLOTTE C. TAYLOR, Defendant and Appellant.

**804**

## COUNSEL

Roger Jon Diamond for Defendant and Appellant.

Lawrence Harris for Plaintiff and Respondent.

## OPINION

**GUSTAFSON, J.**—Defendant Charlotte C. Taylor appeals from a judgment in favor of Eskil Hultin for $7,000 with interest at 7 percent from September 21, 1964, to the date of judgment.

We devote our attention to whether there is substantial evidence in support of the judgment on the cause of action on which the judgment is based.

 Plaintiff and defendant were married June 19, 1964. After their honeymoon, they resided for a short time in a house which defendant had acquired as her separate property before marriage. The property was subject to a deed of trust securing a note.

In August 1964 the parties went to Sweden where plaintiff had an engagement to teach at the University of Stockholm in the fall of 1964. The parties contemplated that when the teaching assignment was completed in December 1964, they would again live in the Pacific Palisades house. They shopped together in Europe for items for the house.

In September 1964 plaintiff discussed with defendant the use to which he should put over $7,000 which he had in a savings bank. Defendant called plaintiff's attention to the fact that there was a deed of trust on her house in Pacific Palisades securing a note which carried interest at 6.7 percent per year. Defendant suggested to plaintiff that paying the note was one method of using the money. Plaintiff was also considering the purchase of stock. Without the knowledge of defendant, plaintiff withdrew $7,000 from the bank in Sweden on September 21, 1964, and arranged to have it applied to the payment on the note secured by the deed of trust. Plaintiff testified that he took this course of action for two reasons. First, in the light of the difficulty of getting money from Sweden to the United States if he should die, he wanted to make certain that his wife would have the benefit of the money. Second, "I learned that Charlotte had a mortgage on her house and she was paying [interest] on this mortgage. . . . And to me, it was immediately sensible when I had money available . . . that the family should [not] pay higher interest when I got lower [interest] on the money I had in my savings bank. . . . [T]hat was a good investment." Although defendant had worked prior to her marriage to plaintiff, plaintiff obviously

contemplated that either principally or alone he would be bearing the burden of the expenses of the two of them, including the payments of principal and interest on the note if the note were not paid.

What looked like "a good investment" proved not to be so. Defendant returned to the United States in September 1964. By the time plaintiff returned at the end of 1964, defendant's doubts about the wisdom of the marriage had grown to the point where she no longer desired to remain married to plaintiff. When plaintiff returned to the United States, the parties did not live together.

In August 1965 defendant was granted an annulment of the marriage on the basis of the fraud of the plaintiff in falsely representing before marriage that he desired to have children.

Plaintiff then instituted this action to recover the $7,000 which he had "invested." The complaint sought recovery of the $7,000 or imposition of a constructive trust on the property in favor of plaintiff or partition (or sale in lieu thereof) of the property whereby plaintiff would receive a share of the property (or part of the proceeds of any sale in lieu of partition). The basis on which plaintiff sought relief was that defendant was guilty of fraud in falsely representing to him that the parties would live together in the house when they returned from Sweden. ■ One of the causes of action was a common count for money had and received which is an appropriate pleading where (as in the case of fraud) defendant has been unjustly enriched. (*Minor* v. *Baldridge* (1898) 123 Cal. 187 [55 P. 783].) Apparently plaintiff was aware that the trial judge intended to find, as he ultimately did find, that there was no fraud and successfully moved after presenting his case in chief to "amend the pleadings to conform to proof stating common count." ■ The record does not reveal that any amendment of the complaint, written or oral, was ever made. The parties assume in their briefs that the fourth cause of action was amended by deleting therefrom everything except the simple allegation that defendant was indebted to plaintiff for money had and received. We adopt that assumption. Defendant contends that the motion to amend should not have been granted, but the record does not indicate that any objection thereto was made by the defendant. We thus treat the motion to amend as having been properly granted.

The minute order at the conclusion of the trial states that the basis of the judgment is that "plaintiff loaned to defendant the sum of $7,000.00 which has never been repaid." There was clearly no loan by plaintiff to defendant and plaintiff does not claim otherwise. The formal findings of fact, in addition to negating any fraud on the part of the defendant, found that defendant became indebted to plaintiff when plaintiff sent $7,000 from Sweden to discharge the note at defendant's request and in reliance on her

representation that the parties would live in the house after their return to the United States. Insofar as this finding may be construed as one that there was failure of consideration of a contract, the record simply does not support any finding that defendant promised, expressly or impliedly, that plaintiff would live in her house as consideration for plaintiff's payment of the note.

The record is devoid of any evidence that the defendant expressly undertook any liability with respect to the money used by plaintiff to discharge the note held by a third person. If there is any obligation of the defendant, it is one which is implied in law.

 Restitution is available to plaintiff when the defendant has been unjustly enriched through fraud, mistake or coercion. Here we clearly have no fraud or coercion. The most that can be said of the evidence and of the findings of fact supporting the judgment is that plaintiff mistakenly believed that he would live with defendant in the Pacific Palisades house upon his return from Sweden. But the kind of mistake which affords relief is one "of a fact past or present." (Civ. Code, § 1577.) Plaintiff's mistake was not with respect to a fact, but with respect to a future event. "A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, unless the conferring of the benefit is conditioned thereon." (Rest., Restitution, § 58.)

 When a husband from his separate funds makes substantial improvements on the separate property of his wife, the presumption is that he has made a gift and he therefore obtains no interest in that property. (*Walsh* v. *Walsh* (1943) 56 Cal.App.2d 801 [133 P.2d 416]; *Ciambetti* v. *Department of Alcoholic Beverage Control* (1958) 161 Cal.App.2d 340 [326 P.2d 535].) There is no reason why the same rule should not apply when the husband discharges an encumbrance against the wife's separate property. In *Kimbro* v. *Kimbro* (1926) 199 Cal. 344 [249 P. 180] a note secured by a deed of trust on the wife's separate property was paid from income from the husband's separate property. The Supreme Court reversed the trial court's finding that the husband had an interest in the property noting that the "fact that the husband . . . expected to occupy the domicile in conjugal happiness with his wife to the end of his days" was not sufficient to afford relief. Similarly, in *Taylor* v. *Taylor* (1944) 66 Cal.App.2d 390 [152 P.2d 480] the husband, in a marriage which terminated in annulment, was not entitled to any relief for conveyances made to his wife when, at the time he made the gifts, he "had no purpose in mind other than to share his possessions with [his wife]."

There are in evidence many letters written by defendant to plaintiff. When the marriage began to disintegrate and it appeared that it would not last, defendant expressed her appreciation of plaintiff's having paid the note and assured him that she would reimburse him. While it can be inferred from defendant's statements in the letters that she did not believe that plaintiff had made a gift, nothing said by defendant in the letters constitutes an admission that as of September 21, 1964, plaintiff was loaning defendant $7,000[1] or that he was paying that amount as consideration for the right to live in the Pacific Palisades house.

Finding as we do that there is no substantial evidence in support of the judgment, the judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

---

[1]It would not have been good business judgment for defendant to have exchanged her obligation to pay $7,000 in installments at 6.7 percent interest for an obligation to pay $7,000 immediately with interest at 7 percent until paid. On the other hand, if plaintiff became subrogated to the rights of the creditor who was paid (see *Grant v. de Otte* (1954) 122 Cal.App.2d 724 [265 P.2d 952]), defendant would have been no worse off than she was before plaintiff made the payment. But plaintiff did not seek a determination that subrogation occurred, the case was not tried on that theory and the court did not grant that relief. The relief granted was a money judgment for plaintiff with interest at 7 percent back to September 21, 1964, a result (so far as interest is concerned) which counsel for plaintiff confessed at oral argument surprised him. His surprise can be explained only by the fact that he did not believe that defendant became obligated to pay plaintiff $7,000 on September 21, 1964.