[Civ. No. 40505. Second Dist., Div. One. Apr. 12, 1973.]

ELISABETH H. PENTZ, Plaintiff and Appellant, v.
MARCIA F. KUPPINGER, Defendant and Respondent.

**COUNSEL**

Louis Miller and Frank E. Mauritz for Plaintiff and Appellant.

Barrick, Poole & Knox for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Plaintiff appeals from an order dismissing her action against defendant pursuant to the provisions of section 581, subdivision 3, Code

of Civil Procedure, when she declined to amend her amended complaint after a demurrer thereto had been sustained with leave to amend and, as expressly provided by the statute, moved for such dismissal.[1] In addition to other relief, the action sought recovery of assertedly excessive amounts collected by defendant under a Mexican judgment based, in turn, upon an earlier judgment in a California divorce proceeding.

We find the relevant background facts in plaintiff's pleading which, in the procedural posture of the case, must be accepted as accurate. (*Endler* v. *Schutzbank,* 68 Cal.2d 162, 165 [65 Cal.Rptr. 297, 436 P.2d 297].) Both parties were formerly married to Elliott H. Pentz, a Los Angeles attorney since deceased. Defendant's marriage to Mr. Pentz was dissolved in Los Angeles by a final judgment of divorce entered on September 11, 1964; unmodified thereby were the provisions of the interlocutory judgment (August 13, 1963) whereunder Pentz was ordered to pay alimony of $500 per month commencing August 1, 1963, as well as attorney's fees in the sum of $1,000; a lien to secure payment of the above sums was impressed thereunder upon all net fees and funds owed to Pentz by the law firm of Hill, Farrer and Burrill, of which he was a member. On December 29, 1965, Pentz and plaintiff were married in Guadalajara, Mexico, where both, still retaining United States citizenship, made their residence. Subsequently, on May 24, 1966, defendant married her present husband (Marvin Kuppinger).

Pentz died in Guadalajara on July 17, 1968; thereafter his estate (in excess of $130,000) was administered in the Guadalajara probate court and ordered distributed as follows: one-half to plaintiff and one-half to Raymond Pentz, a son by his father's marriage to defendant. The decree of distribution further provided that the above shares, thus distributable, were subject to the payment (one-half by plaintiff and one-half by Raymond) of the expenses of decedent's last illness and funeral, as well as inheritance costs and "whatever other legitimate debts of Pentz might appear in the future."

On November 4, 1968, pursuant to her application therefor, defendant

---

[1]The demurrer went to only three of the four causes of action—the unchallenged cause of action being in the form of a common count (money had and received). Under the "one final judgment" rule, the rendition of the present order would be considered premature (*Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701 [128 P.2d 357]) had plaintiff not requested the dismissal as to the entire cause; in so doing, she presumably concedes that a common count is subject to demurrer when joined (as here) with another count specifically pleading the facts upon which the demand is based. (See 5 Cal.Jur.2d Rev., Assumpsit, § 39.) Furthermore, since no affirmative relief has yet been demanded by defendant, under other subdivisions of section 581 plaintiff had the right to ask for dismissal of the common count.

secured a writ of execution from the Los Angeles court for the sum of $19,251.61 of which $18,251.61 represented principal and interest (alimony) up to the date of defendant's remarriage, and $1,000 (attorney's fees) due under the 1963 interlocutory judgment; thereafter, on October 11, 1969, she commenced an action against plaintiff in the Fourth Civil Court, Guadalajara, to enforce payments of the sums alleged to be due her under that judgment. In such action (designated "Civil Executory Suit No. 3058/69") defendant demanded payment of $29,516 as alimony, $8,015 as costs in the Los Angeles action,[2] interest on the foregoing sums and costs incurred in the pending (Guadalajara) action. Plaintiff herein appeared in this latter proceeding; by answer she denied that the court had jurisdiction, alleged that defendant was without capacity to sue, denied any obligation due defendant herein and alleged defendant's failure to present timely claims against the Pentz estate.

The matter having been submitted for decision, the Guadalajara court found in favor of plaintiff (defendant herein) and ordered payment to her of the following sums (totalling $18,765.60) being one-half of the decedent's legitimate debts: $14,758—alimony due from August 13, 1963, to July 17, 1968 (the date of decedent's death); $3,205—indemnification (reimbursement); $500 additional attorney's fees; $482.60 costs. Defendant (plaintiff herein) was also ordered to pay costs in the Guadalajara action, amounting to $1,876.64, the total judgment thus being for $20,642.24. Subsequently an appeal was prosecuted by defendant (plaintiff herein) to the Supreme Court of Justice of the State of Jalisco which, on December 8, 1970, affirmed the lower court's judgment. Following such affirmance, defendant here obtained payment of the total above sum ($20,642.24) by process directed to a Guadalajara banking association where plaintiff was a depositor; still later, without her knowledge and pursuant to court order, the same banking association made an additional payment to defendant from plaintiff's funds ($4,445.12) on account of accrued interest.

Under the Guadalajara judgment defendant has thus collected from plaintiff a sum slightly in excess of $25,000 although, as pointed out by plaintiff (and shown above), only $19,251.61 admittedly was due under the Los Angeles interlocutory judgment—and the writ of execution issued out of the Los Angeles court confirmed such balance. Since plaintiff is

---

[2]Said sum ($8,015) appears to be the approximate total of the following items referred to in the writ of execution: $6,050 reimbursement; $1,000 additional attorney's fees; and $965.20 accrued costs. Despite the recital of such additional sums, the writ issued for only $19,251.61.

liable for only one-half of such indebtedness (approximately $9,600), defendant thus stands to be enriched in the approximate sum of $15,400.

Claiming that defendant would be enriched unjustly by such overpayment, in her first cause of action plaintiff sought restitution of said sum. "Restitution is available to plaintiff when the defendant has been unjustly enriched through fraud, mistake or coercion." (*Hultin* v. *Taylor,* 6 Cal. App.3d 802, 806 [86 Cal.Rptr. 285].) The cited case quotes approvingly from the Restatement (Restitution) although the section quoted (§ 58) is not specifically applicable here; more applicable to the circumstances of the instant case is section 72 relating to "Valid and Unreversed Judgments," particularly the Comment thereto.[3] Consistent with the *Hultin* decision, plaintiff's second cause of action was a common count for money had and received "which is an appropriate pleading where (as in the case of fraud) defendant has been unjustly enriched." (*Supra,* p. 805.) The third cause of action sought an order compelling defendant to execute a satisfaction in full of the property provisions of the interlocutory judgment, while the fourth cause of action asked for injunctive and other relief—an order compelling defendant to enter full satisfaction of the Guadalajara judgment, enjoining her from enforcing such judgment and for damages (7 percent per annum on funds attached in excess of those due under the interlocutory judgment). The second cause of action having been dismissed, these last two causes of action depend for survival on the legal sufficiency of the matters alleged in the first cause of action wherein recovery was sought by reason of unjust enrichment; accordingly, we first consider whether the demurrer thereto was properly sustained.

As indicated in the Restatement (fn. 3, *supra*), recovery under the

---

[3]"*d. Remedies against improper judgments.* A person against whom a judgment has been rendered improperly has various means of redress in the same proceeding. On his motion the trial court can set it aside, entering a judgment for him or ordering a new trial; or on motion, writ of error or other procedural device, an appellate court can grant relief. As long as these remedies are adequate a defeated party has no other relief. If, because of lapse of time before the facts are discovered, such remedies are inadequate, in the absence of statute, the sole remedy when a judgment has been improperly obtained is by a proceeding in equity directly attacking the judgment either by a proceeding to set it aside, brought in a court of the same State where the judgment was originally rendered, or by a proceeding brought in that State or in another State in which the means by which the judgment was obtained are attacked. In such a proceeding, if it is shown that, because of fraud, mistake, or duress, an opportunity for a fair trial was not given, the successful party therein may be, and normally will be, enjoined from enforcing the judgment if it is unpaid. If money has been paid under a judgment, the execution of which would have been enjoined if no payments had been made, the court of equity will grant restitution, unless there is an equitable defense available, such as laches. If the judgment has been partially satisfied, restitution will be ordered in connection with an injunction against further enforcement. . . ."

theory presently invoked is predicated on fraud or some other related cause in the procurement of the judgment challenged. It is conceded that the fraud sufficient to justify equitable relief from a judgment must be extrinsic or collateral to the questions examined or determined; too, in an action for such relief based upon extrinsic fraud in obtaining a judgment, the fraud must be pleaded with particularity. (*Hammell* v. *Britton,* 19 Cal.2d 72, 82 [119 P.2d 333].) As further declared in the above case, "It has been frequently stated that equitable relief from a judgment . . . will not be granted merely because it was obtained by perjured testimony or forged documents; that constitutes intrinsic fraud against which defense may be made at the trial. False or perjured testimony is not extrinsic fraud." (*Supra,* p. 82.) Finally, to constitute extrinsic fraud "there must have been some representation or concealment by the [plaintiff] which prevented the [defendant] from having his day in court . . . ." (*Gale* v. *Witt,* 31 Cal.2d 362, 366 [188 P.2d 755].)

In the first cause of action there were allegations that defendant and her counsel in the Mexican proceedings failed to disclose (a) that the alimony payments under the interlocutory judgment terminated on the wife's remarriage, and (b) the receipt by her of payments and credits which further reduced the total of the sums therein demanded. The pertinent allegations as to (a) are set forth below;[4] as to (b), such asserted receipts consisted of a payment by Raymond Pentz in the sum of $9,000 during the pendency of the Mexican proceeding, as well as sums received by defendant from decedent's former law firm.[5]

---

[4]"(c) At all times after her remarriage on May 24, 1966, and particularly at the time of the filing of the Fourth Civil Court proceedings, and at all times thereafter, defendant knew that the obligation of Pentz to pay alimony to defendant provided in the interlocutory judgment of divorce and in the pendente lite order had ceased on the date of her remarriage. At no time during the pendency of the Fourth Civil Court proceeding, did defendant or her attorney, Daniel Cano Nunez, disclose to the Fourth Civil Court or to the Supreme Court of Justice of the State of Jalisco that her alimony payments had terminated on her remarriage and that defendant's demand by the declaration of her said attorney was excessive as to claimed alimony by $13,000.00."

[5](a) "Defendant did not at any time disclose to the Fourth Civil Court or to the Supreme Court of Justice of the State of Jalisco or to any California court the fact of, or the amount of, the payments received by her from Raymond Pentz as hereinabove alleged, and neither one of said courts gave Pentz or plaintiff credit for such payment.

"Plaintiff was first informed of such payments after the termination of the Mexican proceedings. Defendant failed to disclose to the Mexican courts and also to plaintiff that such payments were made and received and did not disclose that her demand as to claimed alimony was excessive by these payments in said amount of $9,000.00."

(b) "Plaintiff during these Mexican Court proceedings inquired of the firm of Hill, Farrer & Burrill for information as to whether any payments were made as a result of the lien created in the interlocutory judgment, the amount of such payments,

According to the trial court's minute order, the demurrer was sustained because "No additional facts [were] offered to support [the] claim of extrinsic fraud." The demurrer to the original complaint was sustained on the ground that the matters raised therein were or could have been decided by the Guadalajara court; hence, if any fraud was practiced, it was merely intrinsic. According to defendant, the facts pleaded in the amended complaint provide nothing fundamentally new; thus, although it was therein asserted that defendant failed to advise the Guadalajara court that her alimony had ceased, a copy of her application for a writ of execution (annexed to plaintiff's pleading) expressly states that her alimony ceased on the date of her remarriage (May 24, 1966). Since the Guadalajara court made findings based on the writ of execution, defendant concludes, it cannot properly be urged that the cessation of alimony was not brought to the court's attention. As for the receipt of the sums alleged in footnote 5(a) and (b), defendant argues that the fraud, if any, was likewise intrinsic; according to defendant, plaintiff admits that she made inquiries regarding the payment from decedent's former law firm but did nothing further when she was rebuffed—a similar argument is directed against the alleged payment of $9,000 by Raymond Pentz although, unlike the matters alleged in 5(b), plaintiff had not even a suspicion that credit should have been given for sums received by defendant.

As to the matters contained in footnote 4, we agree with defendant that they allege intrinsic fraud only; although (as subsequently shown) the admittedly excess award is subject to annulment on another ground, the circumstances pleaded fail to show that plaintiff was denied her day in court respecting the claim that defendant's alimony terminated upon the latter's remarriage—the fact of such termination was conceded by defendant. A contrary conclusion, however, must be made as to the allegations in footnote 5(a) and (b). Described by Witkin as "an extremely liberal nonfiduciary case" (Witkin, Cal. Procedure (2d ed. 1971) p. 3755), it was held in *Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194], that "The main requirement to establish extrinsic fraud is that the

if any, but such inquiries were not answered by such firm except that such firm advised and suggested that plaintiff should address such inquiries to defendant. Plaintiff on such advice and suggestion addressed such inquiries to defendant's attorney Daniel Cano Nunez, who advised her he had no knowledge of any payments from the firm of Hill, Farrer and Burrill to defendant. Defendant on September 26, 1969, prior to initiating the aforementioned proceedings in the Fourth Civil Court, did in fact receive payment of $2,346.38 from said firm of Hill, Farrer, and Burrill which made such payment to defendant on behalf of Pentz as a result of said lien impressed by said interlocutory judgment. Defendant did not at any time disclose to any Mexican Court or to any California Court the fact of, or the amount of, the payment received by her from said firm of Hill, Farrer, and Burrill as hereinabove alleged, and neither one of said courts gave Pentz or plaintiff credit for such payment."

unsuccessful party was prevented by his adversary from presenting *all* of his case to the court." (P. 479.) In reaching the above determination, the court cited and discussed the then leading cases on the problem, including *Flood* v. *Templeton,* 152 Cal. 148 [92 P. 78], on which defendant relies in her brief. ■ For the reasons alleged in footnote 5(a), it is clear that plaintiff was denied the opportunity to acquaint the Guadalajara court with the Raymond Pentz payment; such alleged concealment constitutes extrinsic fraud. As to the concealment of the sum received from decedent's former law firm (fn. 5(b)), the pleaded circumstances seem apposite to those in *Stenderup* v. *Broadway State Bank,* 219 Cal. 593 [28 P.2d 14]; there the defendant withheld requested information without which plaintiff was unable to show fraud in accounting. The court said: "If this conduct was, as alleged, for the fraudulent purpose of preventing information as to the status of these notes from reaching plaintiff, and to deceive him and the court, it was conduct extrinsic and collateral to the issue made by the pleadings and authorized relief in equity under the rule relating to extraneous fraud, recently discussed, and perhaps extended, by this court in the case of *Caldwell* v. *Taylor,* 218 Cal. 471. . . ." (Pp. 596-597.) Since plaintiff was denied her day in court as to *all* of the issues tendered by her pleading, the trial court erred in sustaining the demurrer upon the grounds stated.

■ There is still another reason why the Guadalajara judgment should not be permitted to stand as to the matters alleged in footnote 4; necessarily according accuracy thereto, the Mexican court awarded alimony to defendant for a period following her remarriage. Contrary to defendant's claim, the doctrine of res judicata does not defeat the instant challenge to such award. Under the Uniform Money-Judgments Recognition Act (Code Civ. Proc., §§ 1713 et seq.), a foreign money judgment need not be recognized if the cause of action on which it is based "is repugnant to the public policy of this state." (Code Civ. Proc., § 1713.4, subd. (b)(3).) Pursuant to section 139, Civil Code, a husband shall no longer be liable for his wife's support upon her remarriage; such provisions were added to the statute in 1933 and, as shown in *Hansen* v. *Hansen,* 93 Cal.App.2d 568, 571 [209 P.2d 626], "merely enacted into statutory form a rule of public policy recognized long prior to 1933 by judicial decisions." Since the Guadalajara judgment enforces payment for post-marriage alimony, it is manifestly contrary to California public policy because it is in conflict with the earlier California judgments (both interlocutory and final) which long ago had become final; it is further provided by the above act that recognition will not be given a foreign judgment if such judgment "conflicts with another final and conclusive judgment." (Code

Civ. Proc., § 1713.4, subd. (b)(4).) Finally, it seems equally clear that the Guadalajara judgment gives greater effect to the California judgments upon which it is based; although there is a diversity of opinion relative thereto (Witkin, Cal. Procedure (2d ed. 1970) pp. 756-757), we believe that the Mexican court acted to that extent in excess of its jurisdiction and gave plaintiff grounds for the collateral attack here pursued.

The order (dismissing the first, third and fourth causes of action) is reversed with instructions to overrule the general demurrer thereto.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied May 9, 1973, and respondent's petition for a hearing by the Supreme Court was denied June 20, 1973. Wright, C. J., and Clark, J., were of the opinion that the petition should be granted.