[Civ. No. 54947. Second Dist., Div. Four. July 16, 1979.]

LOS ANGELES AIRWAYS, INC., Plaintiff and Appellant, v.
HUGHES TOOL COMPANY et al., Defendants and Respondents.

---

**COUNSEL**

Murphy, Thornton, Hinerfeld & Cahill, Timothy M. Thornton, Robert E. Hinerfeld and David Elson for Plaintiff and Appellant.

Hill, Farrer & Burrill, William M. Bitting and Jack R. White for Defendants and Respondents.

**OPINION**

**KINGSLEY, J.**—The underlying action is one by Los Angeles Airways (LAA) for damages for failure to carry out a projected agreement whereby respondents were to purchase the assets of LAA and assume its liabilities. Trial of the action resulted in a judgment for defendants. Petitioner here contends that documents, material to its case, were concealed by agents of the defendants and that those documents, if now presented to the trial court, would cause it to grant a motion for new trial.

At the trial, and here, it was the theory of the plaintiff that there were, over a period of several years, negotiations between it and the defendants (herein collectively referred to as the Hughes Company) looking to such a result. Those negotiations, conducted primarily by Robert Mahue for the Hughes Company, had finally resulted in an oral agreement as to the terms to be included in a written agreement. A formal press conference to be held May 25, 1970, had been announced; but that conference was cancelled and execution of the contract was deferred at the orders of Mr. Hughes. During the negotiations, and in order to keep plaintiff (which was in financial difficulties) alive, Mahue, with the approval of Mr. Hughes, had assisted plaintiff in securing substantial operating loans.

No written contract was ever signed. The basis of the trial court's decision is reflected in these findings of fact:

"11. On May 11, 12, and 13, 1970, and thereafter, the terms and conditions of a proposed written contract were fully discussed, primarily by attorneys acting for the respective proposed buyer (either Hughes Tool Company or Hughes Air Corp.) and seller (LAA). The representatives for the parties, on May 13, 1970, orally expressed agreement or understanding with respect to the terms to be included in a written agreement. However, neither Los Angeles Airways, Inc. (nor anyone acting in its behalf) nor Hughes Tool Company or Hughes Air Corp. (nor anyone acting in behalf of either of them) intended to be bound to purchase or sell the assets of LAA until a definitive final written agreement was prepared, all of the necessary approvals of the respective lawyers and respective corporate authorizations had been obtained affirming and approving the written agreement, nor until the written agreement had been executed by the appropriate corporate officers. None of the parties intended to be bound by the terms of any oral understanding or agreement as was alleged by LAA to have been reached with representa-

tives of Hughes Tool Company or Hughes Air Corp. in May of 1970, or at any other time.

"·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

"14. No unconditional promise was made by anyone acting for Hughes Tool Company or Hughes Air Corp., that any certain written formal agreement would be executed for the purchase and sale of the assets of Los Angeles Airways, Inc., by either defendant.

"15. Any claimed reliance by Los Angeles Airways, Inc. upon any promise by a person or persons purporting to speak for Hughes Tool Company or Hughes Air Corp., to the effect that the assets of Los Angeles Airways, Inc. would be purchased, or that a written purchase agreement would be signed, would not be reasonable under all of the circumstances."

Plaintiff's appeal from the trial court judgment is now pending in this court. The present proceeding is independent of the appeal, and nothing said in this opinion should be taken as reflecting upon the issues which may be raised on the appeal.

During the period herein involved Mr. Hughes (admittedly the person with the ultimate authority to give or withhold consent) was living in Las Vegas and communications between him and his subordinates in the Hughes empire were by memoranda, the originals or copies of which it is now known were kept by him in his files in Las Vegas. In preparation for trial of the lawsuit, plaintiff sought, by various discovery procedures, to secure access to the documents in those files. Some documents were produced by the attorneys for the Hughes Company, coupled with repeated assurances from counsel that they had furnished all documentation of which they were aware. After the trial had ended, and a motion for a new trial had been denied, and after Mr. Hughes' death, proceedings incident to the probate of his estate resulted in making available to plaintiff a quantity of documents in Mr. Hughes' files which were not produced in the discovery proceedings, which plaintiff claims were intentionally suppressed and which plaintiff claims would show that Mahue, in fact, had the authority to finalize the transaction. Plaintiff seeks, in this proceeding an order directing the trial court to reopen the new trial proceedings and to consider the newly discovered documents.

Defendants contend that the documents in question were among the personal papers of Howard Hughes; unknown to those who were conducting this litigation on behalf of the corporate defendants, that plaintiff failed to proceed with diligence after learning that such private memoranda existed; and that the newly discovered documents add nothing of substance to the evidence relied upon by plaintiff at the trial. We need not consider the factual conflict created by the petition and answer filed in this proceeding because our disposition is based upon legal grounds.

I

■ We turn, first, to the question of our power to grant, in whole or in part, the relief requested. In other words, we must first decide whether the fact that fraudulently concealed evidence, material to the plaintiff's case, was discovered while the judgment was on appeal and after the time for a new trial motion had lapsed, is grounds for any relief in the appellate court.

The procedural situation at bench is midway between two more common procedural events: the discovery of new evidence within the time a new trial can be granted, and the discovery of new evidence after a final judgment exists. These situations are sufficiently common that the law is fairly clear in both. ■ Newly discovered evidence, deliberately concealed, and material to the case of the aggrieved party, is indisputably grounds for a new trial in California (and probably everywhere else). (See Code Civ. Proc., § 657, subd. 4; *City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860 [135 Cal.Rptr. 647, 558 P.2d 545].)

■ On the other hand, after a judgment has become final, newly discovered evidence generally is not a ground for reopening that judgment unless the concealment of that evidence prevented a fair adversary hearing, kept the claimant out of court entirely or utterly deprived him of a claim or defense, or precipitated a grave miscarriage of justice such as the conviction of an innocent person. These general propositions hold true no matter what the technical form is of the relief requested, be it an independent equitable attack on the judgment by action or motion; or a petition for writ of *coram vobis* in a criminal or a civil action; or a collateral attack attempted by way of offense or defense in a separate action. ■ Although these various remedies have slightly differing ground rules peculiar to their historical origin and development, they all share in common the underlying principle that courts are

reluctant, in the interests of finality and judicial economy, to reopen a final judgment. Accordingly, in any attempted collateral attack based on lately discovered evidence, it is crucial to be able to demonstrate what amounts to due process deprivation: that the issue in question was really never litigated in any meaningful fashion.

We thus proceed to discuss, in the order proceeding from most general to most specific area of law: the extrinsic/intrinsic fraud rule; the collateral estoppel analogy; and finally, writs of error *coram vobis.*

■ The extrinsic/intrinsic fraud rule is a doctrine developed in courts of equity governing the basis for successful collateral attack on a final judgment by way of an independent proceeding. The rule is that fraud internal to the adversary proceeding, such as perjury committed during trial or error or mistake during the trial, is intrinsic and is not a basis for relief; but fraud that prevented the trial of a claim or prevented the defrauded party from getting into court at all, is extrinsic to the proceeding and is a basis for relief. Obviously, where there has been little or no judicial time invested in trial of a cause or an issue, the factor of judicial economy which otherwise weighs in favor of finality is less strong, and the equitable considerations of fair hearing and of penalizing fraud weigh more compellingly. This subject is exhaustively discussed at 5 Witkin, California Procedure (2d ed. 1971) at page 3752 et seq. Witkin states that the test of extrinsic fraud is fraud that prevented a fair adversary hearing by deliberately keeping a party ignorant of the action or otherwise fraudulently preventing his claim or defense. Normally, if the party was aware of the proceeding, the fraud is intrinsic, but if the fraud totally precluded his raising a claim or defense it will be grounds for relief. A leading California case is *Caldwell* v. *Taylor* (1933) 218 Cal. 471, 475-477 [23 P.2d 758, 88 A.L.R. 1194], where the party aggrieved was prevented by fraud from contesting a will, and relief was granted. See also *Granzella* v. *Jargoyhen* (1974) 43 Cal.App.3d 551, 554-556 [117 Cal.Rptr. 710, 84 A.L.R.3d 1113] [fraud prevented contest of forged will]; *Davi* v. *Belfiore* (1957) 153 Cal.App.2d 325 [314 P.2d 596] [default resulting from trickery]; *Stenderup* v. *Broadway State Bank* (1933) 219 Cal. 593 [28 P.2d 14] [withholding of requested information prevented presentation of fraud defense]; *Pentz* v. *Kuppinger* (1973) 31 Cal.App.3d 590 [107 Cal.Rptr. 540] [denied an opportunity to acquaint foreign court with payments made under domestic judgment, thereby prevented from day in court on all issues tendered by pleadings].

8

The Restatement of Judgments states the orthodox position that only where a party has been prevented from having a reasonably fair trial will equity relieve for fraud. (Rest., Judgments, § 118, com. b.) Internal misconduct, such as perjury, is not normally grounds for relief. "Ordinarily it is a party's misfortune that he cannot produce evidence in time to support his position and rebut the perjury of his opponent. . . ." (Rest., Judgments, § 121, com. a [on cl. (a)].)

■ At bench we have a judgment which is on appeal and hence not final for all purposes. On the other hand, we are beyond the time for a new trial motion where more liberal considerations in favor of relief would prevail. Is deliberate concealment of requested evidence during discovery proceedings more like perjury during the trial—intrinsic fraud—or more like one of the examples of extrinsic fraud, such as withholding, during trial, evidence of a fraud defense which was therefore never raised? We conclude that we are dealing with intrinsic fraud under orthodox doctrine because: (1) the contract claim was presented, evidence was offered, and the matter was litigated; (2) therefore LAA was not totally deprived of an opportunity to present its claim, but rather its claim was allegedly not as strong as it might have been if it had then had available the documents which were allegedly concealed.

The common law writ of *coram nobis*, or its appellate court counterpart, *coram vobis*, has been traditionally classed as civil in nature, but in California its use has been chiefly in criminal cases. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 22, p. 899.)

In *People* v. *Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993], the court said: "The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly cannot be reopened except on motion for new trial.' [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by

him at any time substantially earlier than the time of his motion for the writ.' "

■ Use of *coram vobis* in civil proceedings, at least in California, is rare. The articulated grounds are the same as in the criminal arena, namely, where the error to be corrected does not appear in the record and no other remedy is available, and where the issue involved has not been previously determined. In general, newly discovered evidence is not a basis for writ of error *coram vobis*. (See Annot. (1924) 33 A.L.R. 84; see also *People* v. *Cox* (1936) 18 Cal.App.2d 283, 286 [63 P.2d 849].) In *Rollins* v. *City & County of San Francisco* (1974) 37 Cal.App.3d 145, 148-149 [112 Cal.Rptr. 168], the writ of *coram vobis* was used as the device to remand for newly discovered and highly significant evidence. The court stated that the evidence would probably produce a different result if admitted. Since the issue of due diligence in finding the evidence had not been explored the court remanded to the trial court for reconsideration of the question whether a new trial was warranted. The opinion in *Rollins* does not explore the question whether the same criteria that obtain on a motion for new trial, should also control where the judgment is on appeal, nor does it discuss the limitations on *coram vobis* of *People* v. *Shipman* nor the extrinsic fraud doctrine. The court simply assumes that material evidence, newly discovered while the judgment is pending on appeal, is a ground to reverse the judgment and reopen the new trial issue. In this respect the *Rollins* case is an abrupt departure from precedent in the area and, at least on the face of the opinion, the departure is not explicitly considered or justified.

■ With all due respect, we decline to follow *Rollins*. A rule permitting the criteria for a new trial to govern a case where the evidence is discovered later, has no basis in the statutes or in any other case. It would extend the time for a motion for a new trial by pure judicial fiat. Such an extension not only is beyond our power to create but there is good reason to limit the time within which a new trial may be requested: the fresher in memory are the events of the trial, the more rationally may the trial court exercise the broad discretion it has under Code of Civil Procedure section 657 to grant a new trial. That discretion depends on multiple factual considerations. Many of those considerations depend on actual perceptions throughout the trial which are not preserved on the cold record. Accordingly, there is good reason to limit the time within which such broad discretion may be exercised, and to apply the stricter doctrines of extrinsic fraud which favor finality once we go beyond that

limited time. The Legislature has in fact set such limit. We should not ignore it.

## II

Since we conclude that we are without power to grant relief, we do not reach the issues argued at length in the briefs—namely, whether the showing here made would support a finding of intentional nondisclosure and whether the documents on which plaintiff here relies would, if considered by a trial court, support a grant of a new trial.

The petition is denied.

Files, P. J., and Alarcon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 12, 1979.