[No. D041731. Fourth Dist., Div. One. Dec. 4, 2003.]

In re RACHEL M., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
ROSI M., Defendant and Appellant.

[No. D042607. Fourth Dist., Div. One. Dec. 4, 2003.]

RACHEL M., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY and
ROSI M., Real Parties in Interest

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I.A. and I.B.1.

**COUNSEL**

Linda M. Fabian, under appointment by the Court of Appeal, for Petitioner and Minor.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant and for Real Party in Interest Rosi M..

John J. Sansone, County Counsel, Susan Strom and Janice J. Casillas, Deputy County Counsel, for Plaintiff and Respondent and for Real Party in Interest San Diego County Health & Human Services Angency.

No appearance for Respondent Superior Court.

**O**PINION

**McDONALD, J.**—In this consolidated proceeding Rosi M., the mother of Rachel M., appeals the termination of her parental rights pursuant to Welfare and Institutions Code section 366.26,[2] and Rachel, joined by Rosi, petitions this court for a writ of error *coram vobis* to vacate the judgment based on new evidence. In her appeal, Rosi contends there was insufficient evidence to support a finding that Rachel was likely to be adopted, and the juvenile court erred by not applying the beneficial relationship exception to adoption. (§ 366.26, subd. (c)(1)(A).) In her petition, Rachel urges us to vacate the judgment and remand for a new section 366.26 hearing to consider comments by Rachel's grandmother suggesting that her agreement to adopt Rachel was the result of coercion. We affirm the judgment and deny the petition.

## PROCEDURAL AND FACTUAL BACKGROUND

Rachel, the daughter of Rosi and Michael L., was born in February 2001 with a positive toxicology screen for methamphetamine.[3] Rosi admitted she used methamphetamine during the pregnancy and did not obtain prenatal care. On February 8, Rosi and Michael signed a voluntary contract with the San Diego County Health and Human Services Agency (Agency) to participate in drug testing, substance abuse treatment, and the Healthy Infant Program. During the next six months, Rosi and Michael did not drug test, participate in substance abuse treatment or follow through with a public health nurse for well-baby checks.

On August 3 Agency filed a petition on behalf of Rachel under section 300, subdivision (b), alleging she was at risk because, among other things, her parents had not satisfactorily participated in their voluntary services plan. Rachel was detained at the paternal grandparents' home. Rosi and Michael were referred to Substance Abuse Recovery Management Systems (SARMS), the juvenile court's mandatory drug treatment case management program.

On August 27 the juvenile court found the allegations in the petition true by clear and convincing evidence, declared Rachel a dependant, placed her with a relative, and ordered Rosi and Michael to comply with the reunification plan and participate in SARMS.

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] Michael is not a party to this appeal.

Rosi did not enroll in SARMS and a letter of noncompliance was sent to her last known address in October with no response. On November 7 Rosi pleaded guilty to one count of contempt for noncompliance with SARMS and served two days in jail. Rosi was noncompliant with SARMS in November and December. On February 6, 2002, Rosi pleaded guilty to one count of contempt for noncompliance with SARMS and was sentenced to three days in jail.

After Rosi was released from jail, she began participating in SARMS and convinced the social worker she was committed to reunifying with Rachel. On February 25 the court followed Agency's recommendation that reunification services continue. Rosi continued to comply with her services plan until she gave birth to another child on March 20.

In April Rosi ceased drug treatment. The social worker contacted Rosi and told her to enter a treatment program within 48 hours. Rosi did not comply with the social worker's direction and was ordered to move out of the maternal grandmother's residence. The social worker lost contact with Rosi, and her whereabouts were unknown until August. Agency recommended services be terminated and adoption or guardianship be selected as Rachel's permanent plan. Agency noted the maternal grandmother, who had been Rachel's caretaker for the past year, was willing and able to either adopt Rachel or serve as her guardian. On September 10 the court terminated reunification services and set a section 366.26 hearing.

The adoption assessment social worker was of the opinion that Rachel was likely to be adopted and there was no beneficial parent-child relationship with her parents. In October, the social worker attempted to contact Rosi, but she did not respond to the worker's letters or telephone messages. In November the maternal grandmother told the social worker that Rosi had not stayed at or visited the residence for a month. Grandmother also related that typically when Rosi appeared at the residence she slept for a few days because she had been living on the streets. After she rested, Rosi helped with the laundry and meals and put Rachel to bed.

On December 10 the social worker observed Rosi and Rachel during a 45-minute visit. Rachel called Rosi "mom" and during the visit stayed by her side or sat on her lap. On January 3, 2003, the social worker observed Rosi and Rachel at a 30-minute visit during which Rachel sat on Rosi's lap the entire time. Both visits were shortened because Rachel was tired. In between these two visits, Rosi missed two scheduled supervised visits.

Agency identified the maternal grandmother, who was subject to a home study, as the prospective adoptive parent. Agency reported 42 approved

families were also available to adopt a child like Rachel. In a subsequent report, Agency reported developmental testing showed Rachel's cognitive functioning was moderately delayed at the 18-month level. Rachel's condition was diagnosed as moderate expressive language delay and mild overall delays, both characterized as provisional. The evaluator recommended Rachel be referred to special education services and be reevaluated in a year.

Rosi, who said she stopped using drugs in early December, began living with her sister on January 8, 2003, and visited Rachel every other day until entering a residential treatment program at the end of January.

On February 6, 2003, the court terminated Rosi's parental rights after finding, by clear and convincing evidence, that Rachel was likely to be adopted and none of the exceptions to adoption listed in section 366.26, subdivision (c)(1) had been established. The court further found, by clear and convincing evidence, that adoption was in the best interest of Rachel and selected adoption as her permanent plan.

Rosi filed a timely appeal. Rachel's appellate counsel visited the child in May 2003. Appellate counsel was told by the grandmother that she agreed to adopt her granddaughter because the social worker led her to believe that if she did not agree to do so Rachel would be placed with another family. Rachel's appellate counsel attempted to present the evidence to this court by a motion to augment the record on appeal. (See Code Civ. Proc., § 909.)[4] We denied the motion. (See *In re Zeth S.* (2003) 31 Cal.4th 396 [2 Cal.Rptr.3d 683, 73 P.3d 541].) Subsequently, Rachel's appellate counsel filed this petition for writ of error *coram vobis*. Attached to the petition is the grandmother's declaration, which states in pertinent part:

"Towards the end of the case, Rachel's social worker told me that my daughter's parental rights to Rachel would be terminated and the plan was to go with adoption for Rachel. I told her I wanted guardianship. In fact I told the social worker from the beginning that I wanted guardianship of Rachel. The social worker said there were other families who would adopt Rachel. It was clear to me that if I did not say I would adopt, the social worker would place Rachel with another family who would adopt her. So I said I would adopt Rachel. I was never told that it would be possible for me to have guardianship of Rachel[.] [¶] . . . [¶]

". . . I have signed the adoptive placement papers, but did so only because I did not want Rachel placed in another home. The social worker reminded me

---

[4] Rachel's appellate counsel has supported Rosi's position in contrast to Rachel's trial counsel, who supported Agency's position.

that adoption was still the plan. I knew that there were 42 other families who would adopt Rachel if I did not sign the papers."

We issued an order to show cause, Agency and Rosi[5] responded, and we heard oral argument on the petition, along with Rosi's appeal of the judgment, and reviewed the petition on its merits.

## DISCUSSION

### I. *Rosi's Appeal*

#### A. *Sufficiency of Evidence of Adoptability*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### B. *The Exceptions to Adoption*

##### 1.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

##### 2.

Rosi argues the court erred by not finding an exception to adoption under section 366.26, subdivision (c)(1)(D), which is applicable to a child living with a relative or foster parent who is unable or unwilling to adopt because of exceptional circumstances but who is willing and capable of providing the child with a stable and permanent home and removal of the child from the home would be detrimental to the child. Rosi did not raise this exception to adoption at the hearing below and thereby waived the right to raise the issue on appeal. The juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252 [98 Cal.Rptr.2d 844]; see also *In re Erik P.* (2002) 104 Cal.App.4th 395, 402–403 [127 Cal.Rptr.2d 922].) The party claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies. (*Melvin A.*, at p. 1252; Cal. Rules of Court, rule 1463(d)(3).)

### II. *Rachel's Petition for Writ of Error Coram Vobis*

An appellate court can issue a writ of error *coram vobis* directing the trial court to reconsider its decision based on new evidence discovered after

---

[5] Rosi supports the arguments made in Rachel's petition.

[*] See footnote, *ante*, page 1289.

its decision that would have been grounds for granting reconsideration or a new trial. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 5.191, p. 5-47.) "In effect, the writ *remands* the case to the trial court for the purpose of *reopening the judgment* . . . to consider the new evidence. [Citation.]" (*Ibid.*; see also Alexander et al., Cal. Appellate Practice Handbook (7th ed. 2001) ch. 5, §§ 5.20, 5.21, pp. 161, 162.)

■ A writ of error *coram vobis* is considered to be a drastic remedy that will be issued only if a number of requirements have been satisfied. Among the requirements are the following:

1. No other remedy, such as a motion for new trial or for reconsideration in the trial court, is available to consider the newly discovered evidence (*Monsan Homes, Inc. v. Pogrebneak* (1989) 210 Cal.App.3d 826, 831 [258 Cal.Rptr. 676]);

2. The proffered new evidence will either compel or make probable a different result in the trial court (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1092 [267 Cal.Rptr. 457]);

3. The proffered new evidence was not presented to the trial court for reasons other than the fault or negligence of the petitioner (*People v. Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]) and was unknown to the petitioner at any time substantially earlier than filing the petition for the writ (*In re Derek W.* (1999) 73 Cal.App.4th 828, 832 [86 Cal.Rptr.2d 742]);

4. The proffered new evidence is not presented on an issue adjudicated in the trial court because factual issues that have been adjudicated cannot be reopened except on motion for new trial or for reconsideration (*People v. Shipman, supra,* 62 Cal.2d at p. 230); and

5. The proffered new evidence was unavailable to the petitioner because of extrinsic fraud that prevented the petitioner from having a meaningful hearing on the issue in question (*Los Angeles Airways, Inc. v. Hughes Tool Co.* (1979) 95 Cal.App.3d 1, 9 [156 Cal.Rptr. 805]; but see *Rollins v. City and County of San Francisco* (1974) 37 Cal.App.3d 145, 150 [112 Cal.Rptr. 168]).

The new evidence proffered by Rachel is the declaration of her grandmother that she was misled or coerced by the Agency to agree to adopt Rachel; if she did not adopt Rachel, Rachel would be adopted by others and removed from further contact with her biological family. The grandmother said she had informed the Agency that she wished to become Rachel's guardian. Rachel claims this new evidence was relevant because it supported

the exception to termination of parental rights set forth in section 366.26, subdivision (c)(1)(D). That section provides that parental rights shall not be terminated if "[t]he child is living with a relative . . . who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of . . . the relative . . . would be detrimental to the emotional well-being of the child." Rachel and Rosi argue that because of the Agency's misleading or coercive conduct, they and the grandmother were unaware of the applicability of the section 366.26, subdivision (c)(1)(D) exception and they received no meaningful hearing on that issue; that issue was not submitted to the trial court. The petition requests that the order terminating parental rights be vacated and the matter remanded for a hearing and consideration of the section 366.26, subdivision (c)(1)(D) exception to adoption as the permanent plan for Rachel.

Assuming Rachel's petition satisfies many of the *coram vobis* requirements, we conclude it does not meet the requirement of extrinsic fraud. "Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' [Citation.] 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side[,]—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' (*United States v. Throckmorton* (1878) 98 U.S. 61, 65–66 [25 L.Ed. 93].)" (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17].)

There is nothing in the appellate record or in the documents filed in support of the petition that suggest Agency's actions constituted extrinsic fraud. Even were we to assign a nefarious motive to Agency's actions, Agency did not secrete the grandmother or conceal that she was interested in

a guardianship for Rachel.[6] Rosi and her trial counsel and Rachel's trial counsel had access to the grandmother and her wishes. Neither Rosi nor Rachel's trial counsel was prevented by any Agency act from learning the grandmother preferred guardianship and raising the section 366.26, subdivision (c)(1)(D) exception at trial.

"Even if we assume for the sake of argument that Chuidian deliberately concealed the tendered evidence or even lied about its existence, it cannot be said that such fraud amounted to extrinsic fraud preventing Philguarantee from having its day in court on the issue. To the contrary, we deal with intrinsic fraud at most, that fraud which weakens the opponent's case, as for example by perjury on the witness stand. Such fraud is not a ground to reopen a judgment. [Citations.]" (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian, supra,* 218 Cal.App.3d at p. 1091.)

Therefore, even though the new evidence was not germane to the merits of the issues tried—Rachel's adoptability and the section 366.26, subdivision (c)(1)(A) beneficial relationship exception to adoption—Rachel has not shown this case involved extrinsic fraud.

Although we conclude Rachel has not established the requisite elements for issuance of a writ of error *coram vobis,* we note that even were we to remand the case for consideration by the juvenile court of the section 366.26, subdivision (c)(1)(D) exception to adoption, we have not been provided with a sufficient offer of proof to justify application of that section. Applicability of the subdivision (c)(1)(D) exception requires that the relative or foster parent be unable or unwilling to adopt because of exceptional circumstances. The only exceptional circumstance suggested by Rosi and Rachel in this case is that all members of the family prefer guardianship rather than adoption. Without attempting to delineate the factors that would constitute exceptional circumstances, we are convinced that mere family preference is insufficient.

## DISPOSITION

The judgment is affirmed. The petition is denied.

Haller, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied December 24, 2003, and the petitions of petitioner Rachel M. and appellant Rosi M. for review by the Supreme Court were denied March 3, 2004.

---

[6] Agency kept the court informed of the grandmother's wish to become Rachel's guardian. In its status report for the 12-month hearing, Agency advised the court and the parties that the grandmother would like either to adopt Rachel or become her legal guardian, making this point three times in the report. Agency also reported the grandmother's interest in a legal guardianship in its section 366.26 assessment report.