Filed 3/18/21  M&F Fishing, Inc. v. Philadephia Indemnity Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M&F FISHING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Defendant and Respondent. | D076796 <br><br><br> (Super. Ct. No. 37-2014-00043645-CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Webb & Carey and Patrick D. Webb, for Plaintiff and Appellant.

Clyde and CO US and Douglas J. Collodel; Clyde and CO US, Brian D. Harrison and David M. Rhodes, for Defendant and Respondent.

This is the *fourth* appeal plaintiff M&F Fishing, Inc. (sometimes, M&F or plaintiff) has filed in this court over placement between 1996 and 2003 of marine insurance by real parties in interest Sea–Pac Insurance Managers, Inc. dba Sea–Pac Insurance Services, Raleigh, Schwartz & Powell, Inc., Brown & Brown of Washington, Inc., a subsidiary wholly owned by Brown &

Brown, Inc. (B&B), and Sharon Edmondson (Edmondson) (sometimes real parties in interest are collectively referred to as RPII).

In the instant appeal, plaintiff alleges the court erred in granting summary judgment in favor of defendant Philadelphia Indemnity Insurance Company (PIIC), the errors and omissions carrier for one or more of RPII, and in denying M&F's new trial motion. Following its third appeal in which this court in 2016 affirmed the dismissal of M&F's action against RPII (see *M&F Fishing, Inc. et al. v. Sea-Pac Insurance Managers, Inc.* (Jul. 7, 2016, D067804) [2016 WL 3682604] [nonpub. opn.] (*M&F Fishing II*)), M&F pivoted and filed suit against PIIC.

M&F in its suit against PIIC alleged it was a third party beneficiary to a September 2010 agreement between PIIC and RPII settling a coverage dispute arising from RPII's placement of the marine insurance for M&F (hereafter, Settlement Agreement). Prior to suing PIIC, M&F had spent about *15 years* litigating with RPII in an attempt to recoup purported losses that were the subject of the first appeal in *M&F Fishing, Inc. v. Sea–Pac Insurance Managers, Inc.* (2012) 202 Cal.App.4th 1509 (*M&F Fishing I*).

As we explain, we conclude the court properly granted summary judgment and denied M&F's new trial motion. Affirmed.

OVERVIEW[1]

In *M&F Fishing I*, we reversed a $3.5 million restitution judgment in favor of M&F[2] and on remand limited its right to obtain restitution, if any, to the commissions/broker fees RPII earned when placing marine insurance for M&F with "nonadmitted" insurance carriers. (*M&F Fishing I, supra*, 202 Cal.App.4th at p. 1515.) We explained in *M&F Fishing I* that most marine insurance was placed by "nonadmitted" carriers. Because nonadmitted insurers do not have a license to transact insurance business in California (Ins. Code, § 1776), placements by nonadmitted carriers are effected by a class of specially licensed insurance brokers who are regulated by California's surplus line law (*id.*, § 1761, subd. (a)). (*M&F Fishing I*, at p. 1515.)

As we also explained in *M&F Fishing I*, Edmondson placed marine insurance for M&F from 1996 to 2003. Because that insurance included nonadmitted carriers, Edmondson also was required to have a special lines' surplus lines license. (See Ins. Code, § 1760.5.) However, neither Edmondson nor the brokerage firms where she worked possessed such a

---

[1]  M&F on October 13, 2020, filed an opposed request for judicial notice of court records and transcripts contained in a supplemental appellant's appendix M&F filed on September 8, 2020. We note that the records and transcripts sought to be judicially noticed all predate the trial court's grant of summary judgment in this case, in some instances by more than 10 years; that none of these records and transcripts appear to have been before the court in connection with the summary judgment motion—despite the voluminous filings of both parties; and that all such records and transcripts involve issues that were the subject of *M&F Fishing I* and *II*. For these reasons we deny M&F's request and grant PIIC's motion to strike the supplemental appendix.

[2]  C&F Fishing, Inc. (C&F) was a party to the prior litigation, but is not a party in the instant case. Therefore, we will refer only to M&F when discussing the prior litigation and resulting appeals unless otherwise indicated.

license during most of the seven-year time period she placed marine insurance for M&F.

For years during the relevant time period, Edmondson placed without incident marine insurance for M&F with both admitted and nonadmitted carriers. However, when one of the nonadmitted insurers became insolvent and stopped paying claims, M&F and C&F were each sued by seamen who had been injured in separate incidents. M&F and C&F in March 2004 responded by each filing a lawsuit against RPII seeking damages (as opposed to restitution).[3] Ultimately, case Nos. 67 and 68 were settled for more than $6 million by PIIC, with a carve out for claims M&F asserted in case No. 69.

In *M&F Fishing I*, we *unambiguously* held that M&F was *not* entitled to restitution of premiums paid for admitted or nonadmitted coverage placed by RPII; that M&F *may* be entitled to restitution of commissions/broker fees it paid RPII for *nonadmitted* coverage, but only to the extent (i) they were paid before March 10, 2000 (see Bus. & Prof. Code, § 17208 [four-year limitations period]), and (ii) recovery of such commissions/fees was not within the scope of the releases in the settlement of case Nos. 67 and 68; that the trial court erred in not granting B&B's motion for nonsuit; and that, in connection with M&F's cross-appeal, the court properly exercised its discretion when shortly before trial it denied M&F's motion seeking leave to amend its complaint in case No. 69 to add 84 new plaintiffs, 82 nominal

---

[3]    *M&F Fishing, Inc. v. Sea–Pac. Ins. Managers, Inc.* (Super. Ct. San Diego County, No. GIC 826767) (sometimes, case No. 67); and *C&F Fishing Ltd. v. Sea–Pac Ins. Managers, Inc.* (Super. Ct. San Diego County, No. GIC 826768) (sometimes, case No. 68). M&F and C&F also filed a separate action titled *M&F Fishing, Inc. v. Sea-Pac Insurance Managers, Inc.* (Super. Ct. San Diego County, No. GIC 827769 (sometimes, case No. 69), asserting causes of action under Business and Professions Code section 17200 et seq. (UCL); negligence per se; and declaratory relief.

plaintiffs, and new causes of action including for fraud. (*M&F Fishing I, supra,* 202 Cal.App.4th at pp. 1513–1514.)

Following remand, M&F took the position that our reversal in *M&F Fishing I* allegedly was unqualified, giving it the right to start its case anew. The trial court disagreed, entered judgment in November 2012 in favor of B&B in accordance with our decision, and awarded B&B costs of about $123,000. M&F next moved to modify the B&B judgment. The trial court denied M&F's motion. M&F in 2014 appealed the order denying its motion— its second appeal in this case (see D066922). Ultimately, after lodging the reporter's transcript and this court's denial of a request to consolidate, M&F in July 2015 dismissed its appeal.

Also following remand, M&F twice unsuccessfully sought to amend its complaint in case No. 69, despite our unambiguous decision in *M&F Fishing I* limiting recovery against RPII, if any, to restitution of certain commissions/fees earned for placement of nonadmitted coverage. In the first instance, M&F sought to add 11 causes of action, 38 new plaintiffs, and two defendants. When the trial court denied leave to amend, M&F next sought to reinstate a claim for legal damages based on a negligence per se "cause of action," claiming this cause of action was part of the carve out from the settlement of case Nos. 67 and 68.[4] In seeking leave to amend on this second occasion, M&F argued the "only thing" RPII achieved in *M&F Fishing I* was a retrial, and thus, RPII remained liable to M&F for "legal damages" for RPII's

---

[4]     Negligence per se is not a separate cause of action but rather an evidentiary doctrine that creates a presumption of negligence based on a statutory violation. (See *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285–1286; see also Evid. Code, § 669, subd. (a) [codifying the presumption of negligence].)

5

alleged violation of myriad sections of the Insurance Code, and for "equitable restitution" under the UCL. (*M&F Fishing II*, *supra*, 2016 WL 3682604, at \*6.)

When these efforts failed, M&F sought to set aside the dismissal in case No. 67 entered about seven *years* earlier. M&F claimed it was entitled to relief under Code of Civil Procedure section 473 based on RPII's ongoing fraud and its obligation to pay M&F and C&F for losses in excess of $10 million as found by the *trial court* in case No. 69, despite our decision in *M&F Fishing I* reversing the $3.5 million restitution award. The court in February 2014 denied M&F's set-aside request.

As the parties prepared for the retrial, not surprisingly they disagreed on the issues that would be tried. RPII argued the retrial was limited in scope, in accordance with our decision in *M&F Fishing I*. M&F argued it was not limited to retrying its UCL claim for restitution, if any, of commissions/fees earned by RPII for the placement of coverage with a nonadmitted carrier, but instead could pursue recovery for any alleged unlawful, unfair, and/or fraudulent business practice by RPII that caused M&F loss in fact. The trial court agreed with RPII and once again rejected M&F's attempt to broaden the scope of case No. 69. (*M&F Fishing II*, *supra*, 2016 WL 3682604 at \*6.)

Less than two months before the retrial was set to begin, M&F voluntarily dismissed its UCL claim without prejudice. Despite dismissing what was its only remaining cause of action, M&F confusingly argued that it nonetheless was entitled to pursue various damage claims " 'caused by [d]efendant's breaches of contract, money had and received, tortious violation of the Insurance Code and fraud.' " (*M&F Fishing II*, *supra*, 2016 WL 3682604, at \*7.) M&F further argued these claims "were not new and have

6

'been continuously plead in the complaint from its inception.'" (*Ibid.*) RPII disagreed, and argued the case was over and judgment should be entered because M&F had no remaining causes of action. The court agreed with RPII.

M&F appealed the judgement. In *M&F Fishing II,* we held M&F had no remaining causes of action after it voluntarily dismissed its UCL claim, and affirmed the judgment. (*M&F Fishing II*, *supra*, 2016 WL 3682604, at *7–8].)

All of which leads to this appeal.

M&F filed the instant action in December 2014. In its third amended complaint (TAC), M&F asserted causes of action against PIIC for breach of third-party beneficiary contract, fraud, negligent misrepresentation, and declaratory relief. M&F alleged that PIIC and RPII were "collaterally estopped and bound" by the trial court's findings in case No. 69 (i.e., the subject of *M&F Fishing I* and *II*) that RPII "violated the California Insurance Code, and fraudulently[5] failed to disclose [such] violations . . . thereby caus[ing] the plaintiffs . . . to suffer unpaid protection and indemnity, hull, and port risk insurance benefits of $10 million"; that PIIC had merely "advanced [M&F] $5.5 million [in the settlement of case No. 67], and remains liable to pay [M&F] the remaining $4.5 million" owed by RPII, based on the trial court's finding in its August 13, 2009 statement of decision (SOD) that RPII "caused [M&F] more than $10 million in damages," which finding "was not overturned on appeal" in *M&F Fishing I* (or *II*); that in *M&F Fishing I,* we allegedly "confirmed" the factual findings of the trial court that M&F incurred "$10 million in losses" as a result of Edmondson's placement of

---

5     We neither made nor reviewed for substantial evidence any such finding in *M&F Fishing I* or *II.*

nonadmitted coverage;[6] and that when RPII and PIIC executed the Settlement Agreement in 2010, RPII therefore was liable to M&F for the balance of the damages as set out in the 2009 SOD, triggering an obligation on the part of PIIC to cover those losses.

M&F further alleged in its TAC that on remand following *M&F Fishing I*, it learned for the first time that PIIC and RPII allegedly had violated discovery and sanctions orders; that RPII had sued PIIC in 2009 for bad faith denial of errors and omissions coverage; that RPII and PIIC settled the bad faith action (i.e., the Settlement Agreement), in which PIIC agreed to pay "all 'financial obligations incurred by [RPII] after September 30, 2010, as a result of settlements . . . and/or judgments rendered against' [RPII] in [M&F's] Underlying Claims"; that PIIC therefore "expressly waived all bases on which to challenge any such financial obligations incurred by [RPII], as a result of any settlements of and/or judgments against [RPII]"; and that because RPII

---

6      As we noted in *M&F Fishing II*, following remand M&F's analysis of our decision in *M&F Fishing I* ostensibly allowing it to pursue damage claims against RPII and begin the case anew was in stark contrast to the clear language of that decision, which limited the retrial to a claim under the UCL for restitution of commissions/fees M&F paid to RPII for placement of nonadmitted coverage.  Candidly, M&F's allegation in its operative complaint that we allegedly *confirmed* a $10 million damage award in *M&F Fishing I* is disingenuous.  What we actually said in *M&F Fishing I* is as follows:  "To the extent the trial court based respondents' [i.e., M&F and C&F] $3.5 million restitution award on respondents' losses in excess of $10 million stemming from the claims of the seamen, *we conclude that was error*.  The $10 million in losses arose when the two nonadmitted carriers . . . failed to pay or discontinued paying . . . on the submitted claims involving [two seamen].  *Those damages are not recoverable in a UCL action*. (See *Korea Supply Co.* [*v. Lockheed Martin Corp.* (2003)] 29 Cal.4th [1134,] 1144 [a plaintiff may recover restitution under [Bus. & Prof. Code, §] 17200 but not damages].)  *Moreover, those damages were released by respondents in settlement of their respective professional negligence actions against appellants.*"  (*M&F Fishing I, supra*, 202 Cal.App.4th at p. 1527, italics added.)

8

was financially obligated to pay M&F at least $4.5 million based on the trial court's finding in its SOD, and because this finding was allegedly not overturned in that decision, PIIC at a minimum was liable to M&F in this amount.

M&F further alleged in the TAC there was a conspiracy between RPII and PIIC to breach "their written contracts and their statutory and fiduciary duties under the Insurance Code"; that as a proximate result of the breach of such duties by RPII and PIIC, M&F has "incurred compensatory and consequential damages, costs, expenses and attorneys' fees, and other adverse financial consequences and damages, in an amount greater than $4.5 million"; and that the applicable statutes of limitations on plaintiff's claims were tolled as a result of the conspiracy between RPII and PIIC.

M&F's prayer sought actual, compensatory, and punitive damages; prejudgment interest; reasonable attorney fees and costs; and a declaration of the parties' rights and liabilities under their agreements, and under their statutory and common law duties.

PIIC in January 2018 moved for summary judgment as to each cause of action in the TAC, or, in the alternative, summary adjudication of six issues, as set forth in PIIC's notice of motion. PIIC's summary judgment motion and M&F's opposition to the motion were voluminous, comprising about 10 volumes of the record.[7] As noted, the court granted summary judgment and entered judgment in favor of PIIC. M&F filed a motion for a new trial and/or a new judgment, which the court also denied.

_____

[7] Both parties' filings included myriad objections to the evidence in support of and in opposition to summary judgment. Neither party has challenged the court's rulings on the objections, thereby forfeiting on appeal any claim of error based on the evidence considered by the trial court. (See *Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 182.)

DISCUSSION

I

Summary Judgment

A. *Guiding Principles*

A court may grant a motion for summary judgment when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "When a defendant moves for summary judgment in a situation in which the plaintiff at trial would have the burden of proof by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to ' "show[ ] that one or more elements of the cause of action . . . cannot be established" by the plaintiff.' " (*Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122 (*Mattei*); see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) The moving party, in this case PIIC, has the burden to show that the plaintiff has not established, and cannot reasonably expect to establish, the elements of its cause of action. (See *Mattei*, at p. 122; see *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.) "Once the moving defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of fact exists." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 786–787 (*Melchior*).)

We review a grant of summary judgment de novo and "exercise our independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment or

10

adjudication as a matter of law." (*Melchior*, *supra*, 106 Cal.App.4th at p. 787.) We " ' "consider[ ] all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

Moreover, we review de novo the interpretation of a contract unless the interpretation turns on the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*).) Here, because there were no disputed facts, we interpret the Settlement Agreement de novo. (See *id.* at pp. 865–866.)

B. *Additional Background*

As noted, an insurance coverage dispute arose between RPII and PIIC in a series of cases including as relevant here case No. 69, leading the parties to enter into the Settlement Agreement in September 2010. Under section 1.6 of the Settlement Agreement, PIIC agreed inter alia to pay for certain specified "Covered Liabilit[ies]" on behalf of RPII, *if* they occurred. "Covered Liabilit[ies]" was defined to mean the "financial obligations incurred after September 30, 2010 by" RPII "as a result of settlements of and/or judgments rendered against [RPII] in the Underlying Claims," which, as noted, included case No. 69.[8]

Section 3.1.4 of the Settlement Agreement provided that in the event of a Covered Liability, PIIC "shall pay the same, to or on behalf of [RPII] as the

---

[8]     There were at least six cases other than case No. 69 identified as an "Underlying Claim[]" in section 1.4.1 of the Settlement Agreement, including case nos. 67 and 68.

11

case may be, within a reasonable time period following [PIIC's] receipt of adequate proof of such Covered Liability, in the form of a final judgment or settlement agreement."[9]

In October 2014, M&F moved for summary adjudication as to one standing-related affirmative defense asserted by one or more RPII. This defense averred M&F's claims were barred for failure to allege a cognizable injury attributable to the conduct of one or more RPII. However, RPII conceded this defense was no longer viable in light of our decision in *M&F Fishing I*, where we found M&F at a minimum had standing to pursue its UCL claim for recovery of certain commissions/fees, as noted *ante*. (*M&F Fishing I*, *supra*, 202 Cal.App.4th at pp. 1529–1530.)

Treating M&F's summary adjudication motion as a motion for judgment on the pleadings, the trial court in its December 2014 minute order dismissed this defense. In so doing, the court reiterated that its ruling "does

---

9       Sections 3.1.4.1 and 3.1.4.2 of the Settlement Agreement set forth guidelines that would apply if PIIC objected to a settlement of a Covered Liability. The former section limited PIIC's objection to the amount of any such settlement.

12

not change or alter in any fashion the court's August 15, 2014[10] ruling regarding the proper scope of trial and evidence or any other rulings of the court."

In sum, the TAC alleged that a Covered Liability existed within the meaning of section 1.6 because (1) RPII was "financially obligated" to M&F as a result of the trial court's finding in it 2009 SOD that RPII "caused Plaintiff more than $10 million in damages," which finding M&F averred "was not overturned on appeal" in *M&F Fishing I* (or *II*); (2) M&F in December 2014 obtained a "judgment" within the meaning of section 1.6 against a single RPII

---

10    In light of *M&F Fishing I*, the court in its August 15 order limited the scope of the retrial to the following five main issues:  "1) Plaintiffs' [i.e., M&F and C&F] sole remaining claim is for Defendants' [i.e., RPII] alleged violation of Business & Professions Code § 17200 et seq. based exclusively on Defendants' alleged violation of Insurance Code § 1764.1. [¶] 2) Plaintiffs are not permitted to litigate the issue of whether Plaintiffs suffered harm as a result of Defendants' alleged violation of Insurance Code § 1764.1. [¶] 3) Plaintiffs' potential remedy under  Business and Professions Code, § 17200 is limited to restitution of broker's fees and/or commissions for insurance placed by Defendants with non-admitted insurers on or after March 10, 2000, based on Defendants' alleged violation of Insurance Code § 1764.1.  Plaintiffs are not permitted to pursue: a) recovery of damages, b) restitution of insurance premiums, c) restitution of any monies paid by Plaintiffs and/or received by Defendants in connection with insurance placed with admitted insurers, and/or d) restitution of any monies paid by Plaintiffs and/or received by Defendants before March 10, 2000. [¶] 4) Plaintiffs may pursue their theory that the releases signed by Plaintiffs in the professional negligence actions (GIC 826767 and GIC 826768) did not release Plaintiffs' claims for broker fees for insurance placed by Defendants with non-admitted insurers. Plaintiffs are not permitted to pursue their claim that the releases should be rescinded or otherwise disregarded because of Defendants' alleged fraudulent conduct. [¶] 5) Plaintiffs may pursue their remedy of prejudgment interest on any monies awarded for restitution of broker's fees and/or commissions for insurance placed by Defendants with non-admitted insurers on or after March 10, 2000 based on Defendants' alleged violation of Insurance Code § 1764.1."

13

as to one affirmative defense that, after our decision in *M&F Fishing I*, was rendered inapplicable; and (3) RPII and PIIC in September 2010 entered into the Settlement Agreement in which PIIC agreed that RPII had incurred liability in the Underlying Claims of M&F, including in case No. 69.

As a result of these three specific allegations, M&F asserted four causes of action against PIIC, as noted.

C. *Analysis*

We independently conclude the grant of summary judgment in this case was proper. Pursuant to the plain language of section 1.6 of the Settlement Agreement, we find as a matter of law that RPII did not incur any "financial obligations" to M&F after September 30, 2010, "as a result of settlements of and/or judgments" rendered against RPII in case No. 69. (See *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 152 [noting that if, as here, the plain language of a contract is unambiguous, the court " 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted' "]; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524–525 [noting that where " ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further" ' "].)

Indeed, as we noted in both *M&F Fishing I* and *II*, RPII was not liable to M&F for damages that were the subject of the settlement agreement and release in case No. 67; RPII also was neither liable for losses in excess of $10 million, nor for $3.5 million in restitution as found by the trial court in its 2009 SOD; and that RPII's liability, if any, to M&F was limited to the recovery of commissions/fees M&F paid for nonadmitted coverage Edmondson placed on or after March 10, 2000, (assuming entitlement to such was not

14

released in the settlement of case No. 67—an issue left to the trial court on remand).

Of course, *if*, on remand following *M&F Fishing I*, M&F had succeeded in its UCL claim and recovered commissions/fees that resulted in a judgment in its favor, and *if* that judgment had been affirmed by this court in *M&F Fishing II*, then under the plain language of sections 1.6 and 3.1.4 of the Settlement Agreement, PIIC would have been obligated to pay M&F the amount of that judgment because it arose from an Underlying Claim as defined in section 1.4.1 of the Settlement Agreement.

But that is *not* what happened.

Instead, ostensibly dissatisfied with our decision in *M&F Fishing I* reversing the $3.5 million equitable judgment and limiting its recovery on remand, M&F sought to avoid the law of the case. As summarized in detail in *M&F Fishing II*, M&F on remand initially took the position that our reversal in *M&F Fishing I* was unqualified, giving it the right to start case No. 69 anew. When the trial court correctly rejected that argument given our unambiguous decision, M&F unsuccessfully sought to amend its complaint, including adding 11 causes of action, 38 new plaintiffs, and two defendants.

And, when the court denied M&F leave to amend, M&F next unsuccessfully sought to resuscitate a claim for legal damages based on a negligence per se "cause of action" that M&F had dismissed *six years* earlier in the wake of RPII's pending motion for summary adjudication, about *nine years* after M&F had filed case No. 69. In seeking to resurrect this "cause of action," M&F unpersuasively argued the "only thing" RPII achieved in *M&F Fishing I* was a retrial, and thus, RPII remained liable to M&F for "legal damages and equitable restitution" for RPII's alleged violation of myriad sections of the Insurance Code; and for any other alleged unlawful, unfair,

15

and/or fraudulent business practice that caused M&F loss in fact, as if *M&F Fishing I* had never existed.

In January 2013, after the court twice rejected its attempt to amend its complaint, M&F filed a motion to set aside the dismissal in case No. 67 entered in 2006. M&F argued it was entitled to relief based on RPII's ongoing fraud and its obligation to pay M&F in excess of $10 million as found by the court in case No. 69, notwithstanding our decision in *M&F Fishing I*. The court in February 2014 properly denied that request.

Less than two months before retrial was to commence, M&F in December 2014 dismissed its UCL claim without prejudice. Despite dismissing what ostensibly was its only remaining cause of action in case No. 69, M&F argued it nonetheless was entitled to pursue various damage claims against RPII for breach of contract, money had and received, tortious violation of the Insurance Code, and fraud. The court disagreed, dismissed case No. 69, which dismissal we affirmed in *M&F Fishing II*.

As revealed by the foregoing, at no time following the September 2010 Settlement Agreement did RPII become financially obligated to M&F as provided under section 1.6 of that Agreement. Because M&F's causes of action for breach of contract, fraud, and negligent misrepresentation in the instant case are each premised on the finding there was a "Covered Liability" under section 1.6 of the Settlement Agreement, and because as a matter of law we find no such liability existed, as set forth in *M&F Fishing I and II*, we independently conclude summary judgment was properly granted in this case.

We also independently conclude M&F's fourth cause of action for declaratory relief fails as a matter of law. A claim for declaratory relief fails when it is " ' "wholly derivative" of other failed claims.' " (*Smyth v.*

16

*Berman* (2019) 31 Cal.App.5th 183, 191–192.) Because M&F's declaratory relief cause of action was dependent on, and derivative of, its three other causes of action that fail as a matter of law, summary judgment was also properly granted on this cause of action.

In light of our decision, we further conclude it is unnecessary to reach the parties' other arguments with respect to summary judgment.

## II

### New Trial Motion/New Judgment

Briefly, following entry of judgment on June 21, 2019, M&F moved under various statutes including Code of Civil Procedure section 657[11] for a new trial and/or a "new and different judgment." Claiming the court erred as a matter of law, M&F in its motion essentially reargued the same points it had made in opposition to the summary judgment motion of RPII.

First, M&F argued the court erred in entering judgment because in 2014 when it treated M&F's motion for summary adjudication as a motion for judgment on the pleadings and granted judgment on the single affirmative defense raised by one or more RPII, that judgment for M&F somehow (i) confirmed RPII had caused M&F more than $10 million in damages, and (ii) survived the court's dismissal of the entire action after M&F voluntarily dismissed its UCL claim shortly before retrial, which dismissal and judgment we affirmed in *M&F Fishing II*.

---

[11] Section 657 of the Code of Civil Procedure provides in relevant part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application."

17

Second, M&F claimed the court erred in finding that M&F was not entitled to enforce the Settlement Agreement as a third party beneficiary, and that M&F's interpretation of that Agreement was "unreasonable."

Third, M&F claimed the court erred in finding M&F had no evidence of " 'intrinsic fraud' "[12] in support of its underlying motion to set aside the dismissal in case No. 67, when a previous judge ostensibly had made such a finding.

PIIC opposed the motion. The court in its August 30, 2019 minute order denied M&F's request for a new trial and/or a new judgment.

For the same reason we affirm summary judgment, we also affirm the court's denial of M&F's new trial/new judgment motion. Despite M&F's insistence and inventive arguments otherwise, as we have generally summarized *ante*, at no point following September 2010 when PIIC and RPII entered into the Settlement Agreement was RPII obligated to pay any losses M&F allegedly incurred for RPII's placement of marine insurance between 1996 and 2003, as we confirmed in *M&F Fishing II* and now in this decision. We thus independently conclude there was no error in law when the court denied M&F relief under Code of Civil Procedure section 657, subdivision (7) among other statutes. (See *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018 [noting in "reviewing an order denying a motion for a new trial, we review the entire record, including the evidence, and independently determine whether any error was prejudicial"].)

---

[12] "The extrinsic/intrinsic fraud rule is a doctrine developed in courts of equity governing the basis for successful collateral attack on a final judgment by way of an independent proceeding." (*Los Angeles Airways, Inc. v. Hughes Tool Co.* (1979) 95 Cal.App.3d 1, 7.)

18

DISPOSITION

The judgment is affirmed.  PIIC to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:


O'ROURKE, J.


GUERRERO, J.