Filed 11/16/15  In re Lexi G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re LEXI G., a Person Coming Under the Juvenile Court Law. | B263280 |
| | (Los Angeles County Super. Ct. No. CK99222) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ASHLEY C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn K. Martinez, Juvenile Court Referee.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel for Plaintiff and Respondent.

_____

Ashley C. appeals from the juvenile court's termination of her parental rights over her daughter Lexi G. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lexi G. came to the attention of the Department of Children and Family Services at birth in 2013 due to her mother's drug use during pregnancy. Lexi G. tested positive for amphetamine in toxicology tests. DCFS detained Lexi G. and filed a petition alleging that she came within the jurisdiction of the juvenile court under Welfare and Institutions Code[1] section 300, subdivisions (b) [failure to protect] and (j) [abuse of sibling].[2] The juvenile court found Lexi G. to be a dependent child of the court, removed her from the custody of her parents, and placed her in the home of her maternal great-grandmother, Frances[3] C. Lexi G.'s father G.G. was denied reunification services, and services for Ashley C. were terminated in 2014.

The juvenile court set the hearing for the selection and implementation of a permanent plan under section 366.26 for October 2014. On that date, the court continued the hearing due to a defect in notice to the parties. While in court, Ashley C.'s attorney advised the court that Ashley C. understood that Frances C. "believes that she has to choose adoption but she may also want information on legal guardianship." Counsel requested that DCFS "just discuss both options with her."

The juvenile court inquired into DCFS's discussions with Frances C. Frances C. said that DCFS told her that adoption was what the court would want and that it would be best for Lexi G. Frances C. told the court that DCFS said that if she did not adopt Lexi G., it would find another family member who would adopt her.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] The section 300, subdivision (j) allegation pertained to the conduct of Lexi's father G.G., not to Ashley C.

[3] The maternal great-grandmother's name is spelled both as Frances and Francis in the record. In the absence of any evidence which spelling is correct, we adopt the more common feminine spelling.

The court responded, "I find that atrocious," and advised Frances C., "There is a very strong legislative preference for adoption, especially for young healthy children. And I urge strongly that you consider adoption so that this child will have permanency and stability. But no one will strong arm you." The court ordered that Lexi G. not be removed from Frances C. without a noticed hearing except in case of an emergency, and it ordered DCFS to "rediscuss adoption/guardianship options with the caretaker." The court further ordered that if Frances C. preferred guardianship, DCFS should submit a guardianship report to the court.

The court then advised Frances C. that if she decided she preferred guardianship to adoption, she would either need to be present at the next hearing or work with Lexi G.'s attorney to submit signed documents to the court. Frances C. responded, "So it's not— the adoption isn't absolutely required by the court?" "Correct," replied the juvenile court, nothing that adoption was, however, strongly preferred under the law.

Counsel for Ashley C. suggested to the juvenile court that perhaps Frances C. would feel more comfortable if she knew that she was "protected by the law should she choose guardianship." The juvenile court noted that in order to approve a guardianship, the court would first have to make "certain findings and orders that guardianship is in the child's best interest rather than adoption." The court explained to Frances C., "So that's why I've made an order that the child shall not be removed from you unless the hearing comes to me. So if you say guardianship, the social worker can't say, okay, I'm going to come tomorrow and take away the child. That cannot happen and should not happen."

Counsel for DCFS noted the statutory preference for adoption and stated that DCFS was likely mindful of that preference when speaking with Frances C., but also agreed that "we should sit down with the caretaker and discuss guardianship as well."

The court asked Frances C. whether she had any questions, and she responded that she was confused. The court explained, "[I]n summary, for a young healthy child, there is a strong urging and a very strong preference in our state law that this child should be adopted. [¶] If you prefer guardianship, I've ordered the social worker to prepare a guardianship report so I can address that possibility. And meanwhile, the child cannot be

removed from you, and it's highly unlikely that I, as a judge, will remove the child from you. And if it gets to that point, you'll be noticed to come to court so you'll have an opportunity to be heard on that." Frances C. responded, "Thank you."

On December 5 and 11, 2014, DCFS spoke with Frances C. and reported that "she continues to be very committed to the child and remains interested in adoption. She is very anxious to proceed to the next step of the process." At the January 6, 2015, hearing, counsel for Lexi G. confirmed to the court that DCFS had discussed both guardianship and adoption with Frances C., and that Frances C. had decided that she preferred adoption.

The 366.26 hearing was continued twice more due to problems in locating G.G. for notice purposes. The hearing was finally conducted on March 30, 2015. At that hearing, the court noted that Lexi G. was being "very well cared for by her maternal great-grandmother, who does desire to adopt her." The court terminated parental rights. Both parents appealed. G.G.'s appeal was dismissed as abandoned. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 838.) Ashley C.'s appeal remains.[4]

## DISCUSSION

At a hearing under section 366.26, the court must select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) To implement adoption as the permanent plan, the juvenile court must find, by clear and convincing evidence, that the minor is likely to be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) Then, in the absence of evidence that termination of parental rights would be detrimental to the child under statutorily-specified exceptions (§ 366.26, subd. (c)(1)(A)-(B)), the juvenile court "shall terminate parental rights." (§ 366.26, subd. (c)(1).) Here, the juvenile court found that Lexi G. was

---

**4** At a progress hearing in June 2015 the case was transferred from the Los Angeles Superior Court to Modesto Superior Court. Notwithstanding that transfer, jurisdiction to consider Ashley C.'s appeal from the Los Angeles juvenile court's order remains in this court. (*In re Lisa E.* (1986) 188 Cal.App.3d 399, 404-405.)

4

adoptable, and, finding no evidence that the termination of parental rights would be detrimental to her, terminated both parents' parental rights.

Ashley C. argues on appeal that the order terminating her parental rights should be reversed because DCFS and the juvenile court pressured Frances C. into accepting adoption over a guardianship over Lexi G. She claims that a legal guardianship was the appropriate permanent plan for Lexi G. In response, DCFS contends that Ashley C. neither raised the legal guardianship exception to adoption at the section 366.26 hearing nor objected to the termination of her parental rights, and thereby forfeited the issue on appeal. While parents must raise exceptions to adoption at the section 366.26 hearing (*In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295; *In re Erik P.* (2002) 104 Cal.App.4th 395, 403), DCFS's forfeiture argument does not resolve Ashley C.'s contention that Frances C. was pressured into agreeing to adopt Lexi G. Because we must examine the record to resolve Ashley C.'s coercion argument, and the arguments relating to the adoption exception are interrelated with her coercion claim, we will decide the appeal on its merits.

Ashley C.'s argument that Frances C. was coerced into agreeing to adopt Lexi G. is premised on her characterization of the juvenile court as having "reinforced," rather than "correcting," the improper conduct of the DCFS social worker who pressured Frances C. about adoption prior to the October 2014 court hearing. According to Ashley C., the juvenile court "began to advocate itself for the selection of adoption rather than guardianship" and communicated to Frances C. this message: "[C]hoose adoption and Lexi stays permanently, choose guardianship and the future of her placement with Franc[e]s was in question." She asserts that the record in this case shows that Frances C. "was not given a real choice in the matter, but was instead told she had to agree to adoption or risk losing Lexi."

The record does not support Ashley C.'s characterization of the conduct of the juvenile court or her contention that Frances C. was denied the opportunity to freely choose whether she wanted to seek adoption or legal guardianship. When the court learned that the DCFS social worker had threatened Frances C. with the removal of

5

Lexi G. unless Frances C. agreed to adopt her, the court responded that this conduct was "atrocious." While the court advised Frances C. of the legislative preference for adoption and recommended that she consider it, the court also told Frances C. that "no one [would] strong arm" her into adoption and confirmed that adoption was not required. The court ordered that Lexi G. not be removed from Frances C.'s custody without a noticed hearing unless there was an emergency; that DCFS must discuss both guardianship and adoption with Frances C.; and that if Frances C. preferred to seek a guardianship DCFS was to prepare a guardianship report. The court emphasized that no one would take Lexi G. away without due process if Frances C. chose guardianship over adoption.

Ashley C. focuses on the court's advisement to Frances C. that further findings would have to be made by the court if Frances C. chose guardianship. She argues, "[T]he court made it clear that, should Franc[e]s come out in favor of adoption, that would more or less be the end of the discussion. Should Franc[e]s say that she preferred guardianship, something the [L]egislature intended her to be able to do, the juvenile court stated that further court proceedings would be needed for the court to determine whether it would agree to guardianship. Small wonder Franc[e]s agreed to adoption over guardianship." The court, however, accurately advised Frances C. that it would have to make specific findings in order to proceed with guardianship rather than adoption of this adoptable child: the exception to the termination of parental rights set forth in section 366.26, subdivision (c)(1)(A) requires that to proceed with a legal guardianship with a relative rather than adoption, the juvenile court must find both that the dependent child lives with a relative who is willing and capable of providing the child with a stable and permanent environment through legal guardianship but who is unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child; and that the removal of the child from the custody of his or her relative would be detrimental to his or her emotional well-being. Moreover, while the court could not tell Frances C. in advance how it would rule, the court reassured her that she was "highly unlikely" to lose Lexi G. if she wanted to seek a guardianship, and that no changes could be made in Lexi G.'s placement without a hearing. The court

explained to Frances C., "So that's why I've made an order that the child shall not be removed from you unless the hearing comes to me. So if you say guardianship, the social worker can't say, okay, I'm going to come tomorrow and take away the child. That cannot happen and should not happen." This record does not support Ashley C.'s assertion that the court coerced Frances C. into adoption.

Ashley C. also argues that "the proper exercise of" section 366.26, subdivision (c)(1)(A) "was denied" in this case and that guardianship was the appropriate permanent plan for Lexi G. We understand this to be a claim that the exception in section 366.26, subdivision (c)(1)(A) applied here and should have prevented the termination of Ashley C.'s parental rights. When the juvenile court finds, as it did here implicitly, that the parent has not established the existence of an exception to the termination of parental rights, our review is limited to determining whether the evidence compels a finding in favor of the parent on this issue as a matter of law. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)

Ashley C. has not demonstrated, and cannot on this record demonstrate, that the record compels a finding in her favor as a matter of law. For the juvenile court to have considered a legal guardianship with Frances C. as the permanent plan for Lexi G. under section 366.26, subdivision (c)(1)(A), it would have had to have determined, among other issues, that Frances C. was willing and capable of providing Lexi G. with a stable and permanent home through legal guardianship but was unwilling to adopt her because of circumstances that did not include an unwillingness to accept legal or financial responsibility for Lexi G. (§ 366.26, subd. (c)(1)(A).) The evidence here was to the contrary. The court received evidence that after two further in-depth conversations with DCFS, as ordered by the court to remedy the defective advisements DCFS initially gave, Frances C. chose adoption and was "very anxious" to proceed with it. As Lexi G.'s attorney advised the court, Frances C., after speaking with DCFS, both preferred and was "very comfortable" with adoption. This evidence established that Frances C. was eager to adopt Lexi G. and was not "unwilling to adopt" her. (§ 366.26, subd. (c)(1)(A).) Ashley C. has not established any error in terminating her parental rights.

7

## DISPOSITION

The judgment is affirmed.


                                        ZELON, J.

We concur:



PERLUSS, P. J.



SEGAL, J.


8