Filed 3/24/21  In re Damien V. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DAMIEN V., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANA R.,<br><br>Defendant and Appellant. | F081593<br><br>(Super. Ct. No. JD139215-0)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Raymonda B. Marquez, Judge.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Defendant and Appellant.

Margo A. Raison, County Counsel, and Bryan C. Walters, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Peña, J. and De Santos, J.

In this juvenile dependency case, Dana R. (mother) appeals the juvenile court's order terminating her parental rights as to her minor child, Damien V. (Welf. & Inst. Code,[1] § 366.26). Mother contends the order must be reversed because the juvenile court erred by failing to apply the beneficial parent-child relationship exception to termination of parental rights (§ 366.26, subd. (c)(1)(B)(i)). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Damien was born in February 2019, and he and mother both tested positive for methamphetamine at the time of his birth. A referral was made to the Kern County Department of Human Services (department). Mother admitted to the reporting social worker to using methamphetamine two days prior to Damien's birth. Mother explained she had used methamphetamine every day since she was 16 years old but had completed a substance abuse program and had had a period of two years' sobriety. Mother had a lengthy child welfare history, dating back to 2010. Her parental rights had been terminated as to four other children through dependency proceedings due to issues regarding substance abuse and domestic violence. Mother also had a felony conviction for possession of methamphetamine from 2011 and was registered as a narcotics offender. Mother and father[2] lived together. Father denied drug use but said he did consume alcohol and took medication for depression. On February 6, 2019, the department filed a petition on behalf of Damien alleging he came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) (failure to protect) because of mother's failure to protect Damien due to her substance abuse and under subdivision (j) (abuse of siblings) because of mother's child welfare history relating to Damien's siblings.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal.

On February 6, 2019, the juvenile court found a prima facie showing had been made that Damien was a child described by section 300, subdivisions (b)(1) and (j) and ordered him detained from mother. The court ordered mother to have two-hour supervised visits twice weekly.

Following the detention hearing, mother expressed a willingness to comply with a voluntary case plan. Mother began substance abuse counseling but was resistant to parenting classes because she had already taken them in previous dependency proceedings. Mother agreed to drug test on March 14, 2019, and tested positive for amphetamine and methamphetamine and failed to appear for two other tests in March.

The parents waived their rights to a hearing on the jurisdictional allegations, and on April 9, 2019, the juvenile court found Damien was a child described by section 300, subdivisions (b)(1) and (j). Father was elevated to presumed status at this hearing and was ordered to have two-hour supervised visits with Damien twice per week.

The department's disposition report indicated the parents had both been "moderately cooperative" with the department. Mother "sporadically" attended visits with Damien. The department began requiring mother to check in with the social worker before visits due to her missing several visits. Mother tested positive for amphetamine and methamphetamine in April 2019 and failed to appear at multiple random drug tests in April and May. The department recommended that father receive family reunification services. Mother was not recommended to receive services because statutory bypass provisions applied; the department opined Damien would suffer no detriment should mother not be offered services because he had not had the opportunity to bond with mother.

At the disposition hearing on August 8, 2019, the court ordered removal of Damien from the parents' custody. The court ordered services not be provided to mother pursuant section 361.5, subdivision (b)(10) and (b)(11) and ordered that father receive

3.

services, including substance abuse counseling, parenting, child neglect and participation in random drug testing.

The department's six-month status report indicated that father did not engage in any services and had ceased cooperating with the department. In January 2020, he was arrested for a domestic violence incident involving mother. Mother continued to engage in some voluntary services, but the progress reports the department received from her substance abuse program indicated her participation was minimal and she was at risk of being discharged for missing appointments. Throughout the six-month review period, mother attended three visits with Damien, and father attended two. The parents' skill level and interactions with Damien were characterized as "fair." In October 2020, the social worker attempted to contact the parents by phone and letter stressing the importance of visits. In November 2020, visits were placed on hold due to lack of attendance. Damien was reported as thriving in his placement and meeting developmental milestones. The department recommended father's services be terminated and a section 366.26 hearing be set.

Neither parent was present at the six-month status review hearing on February 7, 2020. The court followed the department's recommendation. The court ordered supervised visits between Damien and the parents to occur once monthly for one hour.

The department's section 366.26 report recommended termination of parental rights and adoption as Damien's permanent plan. Damien's caregivers, with whom he had resided since February 2019, wished to adopt him. It was reported that Damien sought the caregivers' comfort when he was tired and looked to them to meet his daily physical and emotional needs. A "strong relationship" had developed between Damien and his caregivers.

Out of a total of 108 possible visits, mother visited Damien 26 times. Father had a possible 92 visits, and attended 14. It was reported the parents had a "visiting relationship" with Damien. Damien had never resided with the parents, and neither

4.

parent had visited him since October 2019.  Of the visits the parents did attend, they were attentive to Damien; they held him, talked to him, fed him bottles, changed his diaper, and watched him sleep.  A supplemental report indicated mother requested to visit Damien in June 2020; a visit was scheduled, but due to COVID-19, in-person visits were not taking place.  The social worker attempted to schedule a video visit with mother, but she did not respond.  No visit ended up taking place.  The social worker opined Damien would suffer "minimal detriment" from the termination of parental rights due to his young age and degree of attachment with the parents.

At the section 366.26 hearing held on August 3, 2020, both parents' counsel stated they were "simply" objecting to the department's recommendation and did not present any further evidence or argument.  The juvenile court terminated parental rights and ordered adoption as Damien's permanent plan.

## DISCUSSION

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies.  (§ 366.26, subd. (c)(1).)  One of the statutory exceptions is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

It is the parent's burden to show an exception applies.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573–574.)  As to the first prong of the exception, that the parent maintain regular visitation and contact, showing " '[s]poradic visitation is insufficient.' " (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)  As to the second prong, that the child would benefit from continuing the relationship, the parent must prove "his or her relationship with the child 'promotes the well-being of the child to such a degree as to

5.

outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.) The parent must show severing the relationship would deprive the child of a substantial, positive emotional attachment such that the child would be "*greatly* harmed." (*In re Marcelo B.*, at p. 643.)

Mother contends the juvenile court erred by not finding the beneficial parent-child relationship exception applied. The department contends mother's claim is forfeited because she did not raise it below. We agree with the department.

The failure to raise the beneficial parent-child relationship exception in the juvenile court forfeits it as an issue on appeal. (See *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295 [relative caregiver exception; "[t]he juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies"]; see also *In re Daisy D.* (2006) 144 Cal.App.4th 287, 292 [same, with regard to the beneficial sibling relationship exception].)

Here, at the section 366.26 hearing, mother's counsel did not argue the beneficial parent-child relationship exception to termination of parental rights applied. Both parents' counsel merely objected to termination of parental rights, without any argument or evidence. Therefore, mother forfeited her contention.

Nevertheless, even assuming the issue was not forfeited, we conclude the juvenile court did not err in rejecting the beneficial parent-child relationship exception. The exception clearly did not apply on the facts of the present case, and the juvenile court's finding would be upheld under any standard of review.

Mother is unable to carry her burden to prove either prong of the exception. First, mother did not regularly or consistently visit Damien; mother attended 26 out of a possible 108 visits, missing approximately 75 percent of scheduled visits. Mother's last visit with Damien was in October 2019, which was approximately 10 months before the section 366.26 hearing. In addition, Damien was removed from mother's care at five days old, never resided with her, and had not seen her for a continuous 10 months, a

6.

period of which was almost half of Damien's entire life at the time of the section 366.26 hearing.  It cannot be said, based on this record, that Damien and mother had a parent-child relationship that would outweigh the benefits Damien would receive from being adopted or that Damien would be greatly harmed by the severing of the relationship.

We find no error.

## **DISPOSITION**

The juvenile court's order terminating parental rights is affirmed.