Filed 10/19/22  In re C.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | B319264 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>R.R.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18LJJP00474C) |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Conditionally reversed with directions.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Father appeals from the order terminating his parental rights under Welfare and Institutions Code section 366.26[1] as to C.R. (minor). Father contends the court erred when it denied application of the parental relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(i). He further contends the court erroneously failed to ensure compliance with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).

Los Angeles County Department of Children and Family Services (the Department) contends father forfeited any contention of error with respect to the parental relationship exception, and alternatively, the court did not err. The Department concedes that neither the Department nor the court asked paternal relatives about minor's possible Indian ancestry.

We find no error in the juvenile court's implied ruling that the parental relationship exception to termination does not apply to the termination; however, we conditionally reverse and remand the matter solely for the juvenile court to ensure compliance with ICWA and related California statutes.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prior Child Welfare History*

Father and mother have three children: minor (born December 2008), older sister (born February 2003), and older brother (born September 2001).[2] Parents were involved in two prior dependency cases before the current petition was filed. The first case began in 2004 and involved minor's siblings, before minor was born, based on mother's substance abuse and domestic violence between mother and father. In March 2007, the juvenile court terminated jurisdiction with an order awarding custody of minor's siblings to mother. In 2014, the court sustained a second petition based on father's physical abuse of minor, then five years old, and the parents' domestic violence and substance abuse. Father was denied reunification services due to the length of his incarceration, but in April 2017, the court terminated jurisdiction and awarded custody of all three children to father.

*Current Dependency Case*

The current dependency case began in July 2018, during a police investigation into a domestic violence incident that led to father being arrested and charged with attempted murder, dissuading a witness, and child endangerment. All three children, then ages 9, 15, and 16, were removed from parental

---

[2] Mother is not a party to this appeal, and the older siblings are not the subject of father's appeal. Father also has another child, minor's half-sibling, who is not the subject of this appeal.

custody, and father has remained incarcerated throughout the dependency.

During August 2018, the juvenile court found father to be a presumed father, and ordered the Department to assess various paternal relatives and nonrelated extended family members (NREFMs), J.R. and N.R., for placement and as monitors for sibling visits. In October 2018, the court denied minor's request for a long-term visit with N.R. after paternal relatives had moved to Las Vegas. The court gave the Department discretion to place minor with any approved caregiver and allow visits.

In December 2018, the juvenile court sustained the petition allegations based on father's history of violent conduct and substance abuse, declaring minor and his siblings dependents. Father's reunification services included a full drug/alcohol program with after care, random or on-demand drug and alcohol testing, a 12-step program with court care and sponsor, a 52-week certified domestic violence program for domestic violence offenders, a parenting program, individual counseling, and monitored visits.

The Department's six-month review report indicated minor initially had behavioral issues in his foster home and at school. Minor's behavior improved after he was placed in a different foster home and started taking a psychotropic medication. Minor had visits with his siblings, paternal aunt, and NREFM N.R. Minor's oldest brother had one visit with father, but there is no information in the report about any efforts or requests for visits between minor and father. During older brother's visit, father told the social worker he was not enrolled in any programs.

At a contested review hearing in August 2019, the juvenile court found father was not in substantial compliance with his

4

case plan, noting that father was incarcerated, and that three of the four reunification programs ordered were not available to him. Father's counsel requested a no reasonable services finding and six additional months of reunification services, but the court found the Department had made reasonable efforts. Because the children had been out of parental custody for twelve months, the court set the matter for a hearing under section 366.26 for selection of a permanent plan.

In August 2019, minor and his older sister were placed with Ms. S. Minor did well in the new placement. His behavior at home and in school improved; he adjusted to Ms. S. well, calling her mom and expressing a desire to be adopted by her. Ms. S. wanted to provide a stable and permanent home for minor and older sister. She acknowledged the bond between minor and father, and planned to foster and maintain that bond, as she believed breaking it would be detrimental. The Department recommended adoption by Ms. S. as the permanent plan for minor.

The only references to in-person visits between minor and father appear in a status review report filed February 10, 2020. The Department reported that in addition to visiting with his siblings twice a month, minor also visited father "approximately once a month." Describing a visit on February 1, 2020, the social worker transported all three children to the jail, where father thanked the social worker "for always transporting the children to visit him at the jail." The children were given extra time to talk with father; they "took turns to speak with their father and were very happy that they were given enough time to have quality contact with father." Father's birthday was the previous

day, and so the children took turns to wish father happy birthday.

In December 2020, a dependency investigator working with the Department's adoptions unit met with minor to discuss permanency. Minor was able to explain the difference between guardianship and adoption, and he wanted to be adopted by Ms. S. She considered him to be a son, and he considered her to be a mom. Minor wanted to remain in Ms. S's home and live a normal life. According to the report, minor said he did not want to have social workers always coming to his home, nor did he want to be bounced around from home to home. Minor loved father and felt a strong connection, but he also understood that father would be incarcerated for a long time. In terms of minor's desire to maintain a relationship with father even after adoption, minor was open to maintaining contact with father through written letters.

In a January 2021 report, the CSW reported that Ms. S. reported that minor's behavioral issues had resolved, and he no longer needed medication or mental health services. He continued to do well in Ms. S's home.

On March 15, 2021, the juvenile court continued the section 366.26 hearing. Father's counsel raised an issue with respect to telephonic visits, explaining that father had not been provided with the phone number for the foster home. Counsel also explained that father had written a letter to minor but was unsure if it had been forwarded to minor. The court authorized father to have phone calls with minor. With respect to letters, the court specified that father's letters were to be reviewed by a social worker or therapist before being delivered to minor. The

court ordered the Department to provide minor with stamps and envelopes if he wanted to write to father.

On July 13, 2021, the juvenile court denied father's request for a supplemental report about the Department's "efforts to allow . . . father to write" to minor.

In the fall of 2021, minor continued to be well-bonded to Ms. S., who still wanted to adopt minor. Visits with father were no longer taking place.

At the section 366.26 hearing on January 19, 2022, father objected to adoption. According to father's attorney, father had been writing to minor and believed the letters would help minor's decisions about adoption, but father was unsure whether minor received any of the letters. In addition, father believed he would be released from jail shortly, where he was awaiting trial. Father asked the court not to order adoption, or alternatively to grant a continuance. The Department argued no exception to adoption applied, as father had not been in a parental role and did not have regular contact with minor.

When the juvenile court noted that minor was old enough to object, and he wanted to maintain a relationship with father but also wanted adoption, father interjected, asking to address the court. Father claimed he had written letters that were never given to his children. Minor wanted adoption, but he did not have all the information.

The juvenile court ordered mother and father's parental rights as to minor terminated, finding by clear and convincing evidence that minor was adoptable and that no exception to termination applied. Later, the court acknowledged that minor wanted to maintain a relationship with father, and that minor did not receive any letters from father. The court did not revisit

its termination of parental rights; however, the court ordered the Department to follow up on what happened.

## DISCUSSION

### *Parental relationship exception*

Father contends on appeal that the juvenile court erred when it found no exception to adoption applied, because the court should have applied the parental relationship exception. The Department contends father's claim is forfeited because he did not raise it below, and even if the claim is not forfeited, father failed to meet the requirements for the parental relationship exception. We agree with the Department that father failed to adequately raise the parental relationship exception to adoption. Nevertheless, even assuming the issue was not forfeited, we conclude the juvenile court did not err in impliedly rejecting the parental relationship exception.

<u>Forfeiture</u>

The failure to raise the parental relationship exception in the juvenile court forfeits it as an issue on appeal. (See *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295 [relative caregiver exception; the "juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies"]; see also *In re Daisy D.* (2006) 144 Cal.App.4th 287, 292 [same, with regard to beneficial sibling relationship exception].)

At the section 366.26 hearing, father's counsel did not argue the parental relationship exception to termination of

parental rights applied, nor did father or his counsel provide any evidence to support application of the parental relationship exception.  Therefore, father forfeited his contention.

Even if we were to find no forfeiture, father cannot show the court erred in impliedly finding the exception inapplicable here.

Relevant law and standard of review

The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).)  Once the juvenile court has decided to end parent-child reunification services, the legislative preference is for adoption.  (§ 366.26, subd. (b)(1); *In re S.B.* (2009) 46 Cal.4th 529, 532 [if "adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child"].)

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing.  First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time.  (*In re J.W.* (2018) 26 Cal.App.5th 263, 266; *In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249–250.)  Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *Caden C.*, at p. 630.)

One of the statutory exceptions to termination is the parental relationship exception, contained in section 366.26, subdivision (c)(1)(B)(i), which permits the juvenile court to order some other permanent plan if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." As the Supreme Court explained in *Caden C.*, *supra*, 11 Cal.5th 614, at page 636, the exception requires the parent to establish, by a preponderance of the evidence, (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (See *id*. at p. 630 [the "language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child"].) When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*Id*. at p. 634.) However, " '[i]f severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights." (*Id*. at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a parental relationship for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640; cf. *In re R.V.* (2015) 61 Cal.4th 181, 200–201 ["[t]here is, however, no single formulation of the substantial evidence test for all its applications"; where a party fails to meet its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*Caden C.*, at p. 640.)

Analysis

Even assuming father met the first two elements—regular visits and a beneficial relationship—he cannot show the juvenile court abused its discretion in impliedly finding the parental relationship inapplicable, because there was little to no evidence that terminating father's parental rights would be detrimental to minor.

In other words, the ultimate question is not simply how consistently minor visited with father, or whether they had a positive relationship despite father's incarceration, but whether the benefits of stability and permanence through adoption by Ms. S.—with whom minor had been living for more than two years, where he had achieved stability in terms of his mental health, and where he considered Ms. S. as a mother—was outweighed by the harm that would be caused by severing the

11

legal relationship between father and minor. The juvenile court impliedly found no such detriment in terminating parental rights.

Father disputes that finding, but he has not demonstrated the juvenile court's conclusion was arbitrary or irrational, let alone that this case presents the type of " 'exceptional circumstance' " that would warrant departure from the norm of adoption. (*Caden C.*, *supra*, 11 Cal.5th at p. 631 [the parent-child exception, like other statutory exceptions to termination parental rights, is departure from " 'the norm' " of adoption and applies only in " 'exceptional circumstances' "]; accord, *In re Celine R.* (2003) 31 Cal.4th 45, 53.) To the contrary, given the minimal evidence of any meaningful relationship between father and minor, that decision was well within the court's discretion.

## *ICWA*

Father contends that reversal is required because the inquiry requirements of ICWA and related California law were not satisfied in this case.

### ICWA Facts

In the current case, the Department was initially unable to contact mother or father, so neither parent was asked about possible Indian ancestry at the beginning of the case.[3] A number

---

[3] The Department asks us to take judicial notice of minute orders from the 2013 and 2014 prior dependency hearings, finding that ICWA did not apply. Because the state statutory inquiry requirements were revised in 2018, we deny the request

12

of relatives appeared both at the initial hearing on July 27, 2018 and at father's arraignment on August 7, 2018, including minor's adult sibling, paternal aunt, paternal grandfather, and NREFM N.R. Neither the court nor the Department asked any of those relatives if they had any reason to believe minor was an Indian child, despite an extensive discussion about placement on August 7, 2018.

In August 2018, father filed an ICWA-020 notification of Indian status form stating he had no Indian ancestry as far as he knew. Subsequent minute orders and reports stated either that there was no reason to know minor was an Indian child, or that ICWA did not apply.

Relevant Law and Standard of Review

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Both ICWA and California law define an "'Indian child'" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

---

for judicial notice filed on June 23, 2022. Any prior ICWA findings are irrelevant to the issue raised in the current appeal.

California statutory law incorporates the requirements of ICWA, and imposes some additional requirements as well. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742.) State and federal law require the juvenile court to ask parties and participants at the outset of an involuntary child custody proceeding whether they have reason to know a minor is an Indian child, and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R § 23.107(a) (2020); § 224.2, subd. (c); see *Benjamin M.*, at p. 741.)

"The Department's first-step inquiry duty under ICWA and state law was broader [than what is required of a court making inquiry under federal law], requiring it also to interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "extended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required. (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 438.)

Analysis

The juvenile court never asked the family members present at the initial hearing on July 27, 2018 and father's August 7, 2018 arraignment about possible Indian ancestry. In addition, the Department concedes that it did not ask all available extended paternal family members whether minor had Indian ancestry. The court erred in finding ICWA inapplicable in the absence of any evidence that the court or the Department asked available extended family members about the possibility of Indian ancestry. (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [prejudicial error when Department fails to discharge its first step duty of inquiry]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741 [court must ask each participant in child custody proceeding].)

# DISPOSITION

The juvenile court's January 19, 2022, order terminating parental rights under Welfare and Institutions Code section 366.26 is conditionally reversed and remanded for proceedings required by this opinion. The court shall order the Department to make reasonable efforts to interview available extended paternal relatives about the possibility of minor's Indian ancestry and to report on the results of the Department's investigation. Nothing in this disposition precludes the court from ordering additional inquiry of others having an interest in the children. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.

MOOR, J.

I concur:

KIM, J.

16

In re C.R.
B319264


BAKER, Acting P.J., Concurring



I agree the parental benefit exception (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i)) does not apply on these facts. I also agree that a conditional reversal of the parental rights termination order is required because the juvenile court did not comply with federal regulations that require a court to ask participants in a child custody proceeding—at the commencement of the proceeding—whether the participant knows or has reason to know the minor in question is an Indian child. (25 C.F.R. § 23.107(a).) I do not agree, however, with the majority's broadly worded direction to interview "available extended paternal relatives." I would instead remand with directions that *require* inquiry of only those extended family members present at the initial dependency hearing (though the juvenile court would of course be free to order any additional inquiry it deems appropriate).



BAKER, Acting P.J.